PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MILTON L. WHITTINGTON, SR.,

 Plaintiff - Appellee -
Cross-Appellant,

 v.

THE NORDAM GROUP INC.,

 Defendant - Appellant -
Cross-Appellee.

No. 04-5097 and 04-5107

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 02-CV-402-EA)**

Stephen L. Andrew (D. Kevin Ikenberry, with him on the briefs), Andrew, Williams & Ikenberry, Tulsa, Oklahoma, for Defendant - Appellant, Cross-Appellee.

J. Vince Hightower, Tulsa, Oklahoma, for Plaintiff - Appellee, Cross-Appellant.

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

**HARTZ**, Circuit Judge.

 The jury awarded a verdict in favor of the plaintiff, Milton Whittington,

Sr., in a suit under the Age Discrimination in Employment Act, 29 U.S.C. § 623 et

seq. (ADEA), against   The Nordam Group, Inc.  Nordam appeals the district court's judgment on several grounds: the denial of Nordam's motion for judgment as a matter of law (JMOL), alleged errors with respect to jury instructions, and the exclusion of evidence.  Mr. Whittington cross-appeals on the district court's calculation of front-pay damages.  We affirm the judgment in all respects.

## I.    FACTS

When reviewing a jury verdict, we "give [the prevailing] party the benefit of all reasonable inferences to be drawn from the evidence." *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1164 (10th Cir. 2003).  Viewed accordingly, the record reveals the following.

Nordam is an FAA-certified repair and manufacturing station.  Its operations are divided into five divisions: Repair, Transparency, Nacelles and Thrust Reversers, Interiors, and Structures.  Mr. Whittington was employed by the Transparency Division from 1993, when Nordam purchased his prior employer, until he was terminated on January 11, 2002.  The Transparency Division included several production "cells."  During his tenure at Nordam, Mr. Whittington worked in the Stretch, Grind, and Polish cell, which stretched a heated six-by-six-foot billet into a ten-by-ten-foot acrylic sheet that was sold to outside customers or used internally by the other cells in the manufacture of

acrylic products for aircraft. Mr. Whittington worked as the cell supervisor first in Texas and then in Tulsa.

The airline industry, which Nordam services, experienced a severe downturn following the September 11, 2001, terrorist attacks. In late 2001 Gregg Miner, the General Manager of the Transparency Division, decided that business conditions mandated a reduction-in-force (RIF). The existing management team, at Mr. Miner's request, determined the criteria for selecting 15 to 20 employees to be terminated in the RIF. The criteria used were performance evaluations and disciplinary records. The team produced a list of 15 or 16 names. Seventeen employees, including Mr. Whittington, were ultimately selected for the RIF, which was announced on January 11, 2002. At the time of the RIF a human-resources spreadsheet documenting the RIF listed two reasons for Mr. Whittington's inclusion: "restructuring organization due to low sales in product line" and "position eliminated." Aplee. App. at 45.

Mr. Whittington was the only supervisor terminated in the RIF. There were two types of supervisors within the Transparency Division—"Production Supervisors" and "Leads." The two positions shared a common job description. At the time of the RIF in January 2002, the Stretch, Grind, and Polish cell was the only cell in the Transparency Division that had both a Production Supervisor (Mr. Whittington) and a Lead (Herb Overbey). Nordam had been in the process

-3-

of eliminating the title of Production Supervisor for several years, but it had been doing so by changing the titles of individuals holding that position, not by terminating their employment. Only two supervisors had actually been terminated in the prior eight years, both for their failings as employees. Mr. Whittington was the last Production Supervisor and Nordam no longer hires under that title. Although Mr. Overbey reported to Mr. Whittington, the Leads in the other cells, in which there were no Production Supervisors, reported directly to managers. The Leads were regularly rotated between cells. Mr. Whittington, at 62 years old, was the oldest employee included in the RIF. Mr. Overbey was 57 years old at the time.

On May 21, 2002, Mr. Whittington filed suit in the United States District Court for the Northern District of Oklahoma, alleging violation of the ADEA. He sought discovery from Nordam regarding its reasons for terminating him and its evaluation of his skills. In answers to interrogatories Nordam stated that "[t]he level of management occupied by Whittington was eliminated" due to the introduction of "Lean Manufacturing" concepts, Aplt. App. at 219, an elaboration of the explanation "position eliminated," which appeared on the original spreadsheet. In addition, however, it suggested personal shortcomings of Mr. Whittington. One answer stated that "Plaintiff's performance was disappointing." *Id.* at 225–26. Although Nordam further stated that "this was not

the reason that he was included in the Reduction in Force," *id.* at 226, one of the reasons listed for his termination was that he was "not successful in handling production problems," *id.* at 219. In response to an interrogatory asking for any "differentiation(s) based on reasonable factors other than age" on which it relied in including him in the RIF, Nordam answered that "Whittington had no other transferrable skills." *Id.* at 225 (internal quotation marks omitted). Similarly, in response to an interrogatory asking why Mr. Whittington was not offered a transfer or demotion as an alternative to termination, Nordam responded that "Whittington's skill sets did not fit other supervisory positions either at the Transparency Division or at other Divisions within Nordam." *Id.* at 222.

At his deposition in March 2003, Mr. Miner was unsure how Mr. Whittington was selected for termination in the RIF. He testified initially that it was the management team who had selected Mr. Whittington for the termination list. He then testified that he could not remember whether the selection was recommended by the management team. Then he changed his testimony again, returning to the claim that it was, in fact, the team who selected Whittington. But he subsequently switched to an acknowledgment that he had probably been the one to select Mr. Whittington before he finally returned to the position that he had no recollection of when or how Mr. Whittington's name came to be on the list.

At trial Nordam conceded that Mr. Whittington had no blots on his performance record and that he was the only "outstanding" employee on the termination list, Aplt. Supp. App. at 48. Mr. Miner testified that Mr. Whittington did not satisfy the criteria for termination (prior performance or disciplinary problems) established by the management team. Furthermore, Mr. Whittington's former supervisor testified that he had the skills to supervise competently any of the cells in the Transparency Division. The jury also heard testimony from David Vance, a member of the management team, that Nordam regularly transferred its Leads among cells. In fact, testified Mr. Vance, "[i]t's part of Nordam's philosophy for its frontline supervisors to be cross-trained, where they can be a lead—or supervisor of production . . .—in a number of cells." *Id.* at 39. Such a rotation occurred only a few months after the RIF; four of the nine production Leads were moved to positions in new cells.

In contrast to his confusion at his deposition, Mr. Miner was quite clear at trial that he was the one who selected Mr. Whittington for termination. He remembered the "tears running down my eye" at the "difficult" decision. *Id.* at 32. In contrast to the process described in Nordam's interrogatory answers, Mr. Miner testified that Mr. Whittington's selection was the only one among the 17 that did not go through the management chain of command for approval. Although he acknowledged, contrary to Nordam's interrogatory answer, that the

-6-

introduction of Lean Manufacturing processes was *not* the reason for the elimination of the production-supervisor position generally, or Mr. Whittington specifically, he testified that he decided to terminate either Mr. Whittington or Mr. Overbey because the Stretch, Grind, and Polish cell was the only one with two supervisors. He further testified that the choice between the two "came down to time on the job," Aplt. App. at 137; Mr. Whittington was selected over Mr. Overbey because he had less time with the company—nine years versus 14 years. Mr. Miner explained that there was no way to differentiate between the two men on the basis of the preferred performance criteria so tenure was resorted to as an additional differentiator. That Mr. Miner alone selected Mr. Whittington was consistent with Mr. Vance's testimony that Mr. Whittington's name was not on the list presented by the management team one to two weeks before the RIF was announced and that the team first learned of Mr. Whittington's inclusion on the morning of the announcement. The testimony of Laura Lundquist, Nordam's vice president of human resources, also indicates Mr. Miner's role in Mr. Whittington's termination. She testified that two to three weeks before the RIF was announced, Mr. Miner mentioned to her that Mr. Whittington might have to be terminated in the RIF and asked her about the possibility of offering him an early retirement package.

Part of Mr. Whittington's trial strategy was to challenge Nordam's original rationale for his termination. To rebut Nordam's statement that sales were down in his product line, he presented evidence that sales of stretched acrylic, the product line produced by the Stretch, Grind, and Polish cell, rose 141% in the year that ended 11 days before Mr. Whittington's termination. Mr. Miner responded at trial that the use of the word *sales* may have been a poor choice but that the statement was essentially correct. He explained that the increase in sales of stretched acrylic reflected only sales to outside customers, whereas demand had dropped substantially from the *internal* Cabin Windows cell, the single largest consumer of stretched acrylic produced by the Stretch, Grind, and Polish cell. At oral argument on appeal Nordam's counsel distanced his client from the reasons for termination provided on the original spreadsheet by describing the entry as "something that was made up by some clerk." It does not appear, however, that this argument was made at trial. On the contrary, Susan Lawyer, the human resources representative, testified that she completed the spreadsheet entries from information provided by Mr. Miner.

The first trial resulted in a hung jury. The retrial resulted in a verdict in favor of Mr. Whittington. This appeal and cross-appeal followed.

## II. DISCUSSION

### A. Denial of JMOL

-8-

Nordam challenges the district court's denial of its motion for JMOL. First, it raises a variety of challenges to the sufficiency of Mr. Whittington's evidence under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Second, it asks us to declare that a five-year age difference (the difference in age between Mr. Whittington and Mr. Overbey) is insignificant as a matter of law in ADEA claims.

As an initial matter we note that our review of several issues in this appeal, most obviously the sufficiency of the evidence, has been substantially handicapped by Nordam's failure to include a full transcript of the trial in the record before us. Nordam's assertion that "[i]f Whittington really believes that Nordam's appendix omits items that should have been included, his remedy was to include those items in a Supplemental Appendix," Aplt. Reply Br. at 6, reflects a misunderstanding of the burden on an appellant challenging the sufficiency of the evidence at trial. Nordam bore the responsibility to present all the evidence to us and explain why it was inadequate. Although we apparently have excerpts from the testimony of every trial witness, we have less than half the testimony (with consecutive pages often split between Nordam's Appendix and Supplemental Appendix), none of the opening or closing statements, and only seven of Mr. Whittington's 36 exhibits (six of which were supplied in his appendix) and five of Nordam's 86. As a result, it is very difficult, if not

impossible, for us to reconstruct accurately the presentations by the parties at trial. We could dismiss the sufficiency-of-the-evidence claim on this ground alone. *See Dilley v. SuperValu, Inc.*, 296 F.3d 958, 963 n.2 (10th Cir. 2002) (An appellant's "failure to submit the entire trial transcript provides a separate basis for rejecting [a] sufficiency of the evidence argument."); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104–05 (10th Cir. 1998) (rejecting sufficiency-of-the-evidence claim when appellant submitted only excerpts of trial transcript). We need not dismiss on that basis, however, because the record before us is sufficient to uphold the jury's verdict.

### 1. Sufficiency of the Evidence

In order to establish a claim for discriminatory termination under the ADEA, a plaintiff must establish that (1) he is at least 40 years old, *see* 29 U.S.C. § 631(a); (2) that he was terminated by his employer, *see id.* at § 623(a); and (3) that his termination was "because of [his] age," *id.* In assessing whether the district court erred in denying Nordam's motion for JMOL, we do not weigh the evidence, evaluate the credibility of witnesses, or substitute our conclusions for those of the jury. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999). "[W]e determine only whether the jury verdict is supported by substantial evidence when the record is viewed most favorably to the prevailing party. Substantial evidence is something less than the weight of the evidence, and

is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Webco Indus., Inc. v. Thermatool Corp.,* 278 F.3d 1120, 1128 (10th Cir. 2002) (internal citation and quotation marks omitted). We may reverse a jury determination only "if the evidence points but one way and is susceptible to no reasonable inferences supporting" the nonmoving party. *Medlock*, 164 F.3d at 549 (internal quotation marks omitted).

Nordam's argument relies on the *McDonnell Douglas* framework for employment-discrimination cases under Title VII. This framework was established in 1973, when such cases were tried to the court. *See* 4 Lex K. Larson, Employment Discrimination § 80.01[1] (2d ed. 2005) ("Prior to enactment of the Civil Rights Act of 1991, the courts, with a few exceptions, had held that there was no right to a jury trial in suits brought under Title VII . . . ."). *McDonnell Douglas* said:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications . . . . The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection . . . . [The complainant must then] be afforded a fair opportunity to show that

-11-

[the employer's] stated reason for [rejecting the employee] was in fact pretext.

411 U.S. at 802–04. The framework has been applied to cases under the ADEA. *See, e.g.*, *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). In a RIF context the prima facie case is established by a showing that (1) the claimant is within the protected age group, (2) the claimant was doing satisfactory work, (3) the claimant was discharged despite the adequacy of his work, and (4) there is some evidence the employer intended to discriminate against him in making the RIF decision. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998).

Nordam contends that Mr. Whittington failed both to establish a prima facie case and to establish pretext. But Nordam's reliance on the *McDonnell Douglas* framework is misplaced. In *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983), the Supreme Court stated that triers of fact (and reviewing courts) should not be distracted by the legal technicalities of *McDonnell Douglas* in reaching the ultimate issue of discrimination:

> The prima facie case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide

whether the defendant intentionally discriminated against the plaintiff.

*Id.* at 715 (internal citations and quotation marks omitted). We have repeatedly stated that juries are not to apply the *McDonnell Douglas* framework and that we are not concerned with plaintiff's proof of a prima facie case when we review a jury verdict. *See, e.g., Abuan*, 353 F.3d at 1169. Because the employer will present evidence of a proper motive in almost every case, the ultimate question for the jury simply becomes "which party's explanation of the employer's motivation it believes." *Aikens*, 460 U.S. at 716. Our role, therefore, is just to review the record for substantial evidence supporting the jury's verdict.

There is no question that Mr. Whittington was more than 40 years old when he was terminated. The only issue, then, is the motive for his termination—was it "because of [his] age," 29 U.S.C. § 623(a)(1)? The trial evidence hardly *compelled* a finding of a discriminatory motive; but viewing the evidence in the light most favorable to the prevailing party, we cannot say that the verdict was irrational.

"The factfinder is entitled to infer from any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that the employer did not act pursuant to those reasons." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1112 (10th Cir. 2005) (internal quotation marks omitted). "A showing that the employer's justifications for its

-13-

behavior are pretextual permits a finding of intentional discrimination." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

One indication of pretext is the extent of apparent procedural irregularities with respect to Mr. Whittington's selection for the RIF. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) ("[E]vidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."(internal quotation marks omitted)). All other employees included in the RIF were selected by a management team and approval of the selections was obtained through the management hierarchy; Mr. Whittington was selected by Mr. Miner alone, without the knowledge of the team. As the management team was considering all other candidates for termination, Mr. Miner was independently inquiring about the possibility of Mr. Whittington, and no one else, being offered an early retirement package. Furthermore, Mr. Whittington did not meet the discipline and performance criteria used by the management team for selecting the employees for termination.

Another indication of pretext is that Nordam was inconsistent in the reasons it provided for the termination. Nordam asserted rationales for Mr. Whittington's

termination that were later affirmatively disclaimed (the position was eliminated as part of the implementation of Lean Manufacturing concepts and Mr. Whittington's performance was deficient) or abandoned in the face of contrary testimony from its own management (Mr. Whittington had no transferrable skills). A third rationale (a decline in "sales" of his cell's product) was challenged by Mr. Whittington; and even though Nordam proffered a reasonable explanation ("sales" included demand from other cells), the jury was not bound to believe it.

Moreover, other evidence could have undermined the jury's belief in Nordam's credibility. For example, Mr. Miner, who acknowledged being the ultimate decision-maker in the RIF generally, and Mr. Whittington's selection particularly, could not remember at his deposition how Mr. Whittington was selected, but by the time of trial clearly remembered not only that he had selected Mr. Whittington, but also what his rationale had been and how emotionally traumatic the decision had been for him.

The jury could infer that Nordam's explanation at trial for Mr. Whittington's termination (he had less tenure than Mr. Overbey, and one of them had to go) was an after-the-fact rationalization for what had been age discrimination. The evidence is sufficient to support the verdict of discrimination

-15-

reached by the jury. It certainly cannot be said that the evidence "points but one way." *Medlock*, 164 F.3d at 549.

### 2. Insignificant Age Difference

Nordam urges us to establish a bright-line rule that a five-year age difference is insignificant as a matter of law in age-discrimination cases, and therefore it is entitled to a JMOL. It relies on *O'Connor*, 517 U.S. at 312-15, for the proposition that there cannot be an inference of age discrimination when the plaintiff is "insignificantly" older than the similarly situated employees who received better treatment. In *O'Connor* the question was whether an employer could be guilty of age discrimination when replacing an older worker by another who was within the protected class (i.e., was over 40 years old). *Id.* at 312. The Court reversed the district court's grant of summary judgment for the employer, emphasizing that the difference in age was obviously more important in inferring age discrimination than was whether the younger replacement was himself within the group protected by the ADEA. *Id.* at 312-13. The Court noted that "such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger," *id.* at 313, but it did not explore further whether any particular age difference would be significant.

Nordam argues that Mr. Overbey, who was only five years younger than Mr. Whittington, was the only employee who was similarly situated to

Mr. Whittington and therefore the only one to whom he should be compared. It urges that an age difference of five years or less is insignificant as a matter of law and should therefore always bar a finding of age discrimination. (Nordam actually makes this argument in the context of Mr. Whittington's alleged failure to satisfy the fourth element of the *McDonnell Douglas* prima facie case. As we have discussed, however, we need not consider satisfaction of a prima facie case when reviewing a jury verdict. But we consider the rule proposed by Nordam anyway, because it could be applied to foreclose a finding of sufficient evidence on the ultimate issue of discrimination.)

There are two flaws in Nordam's argument. First, Nordam is assuming that Mr. Overbey is the only employee against whom Mr. Whittington should be compared. Mr. Whittington, however, claims, and the jury could have agreed, that he was similarly situated to all nine Leads in the division, because all those jobs involved essentially the same skills and roles. The youngest of these Leads was 28 at the time of Mr. Whittington's termination. It is not contestable that several of them would be considered significantly younger than Mr. Whittington.

Second, even if it is appropriate to compare Mr. Whittington only to Mr. Overbey, we disagree with Nordam that the five-year age difference would be dispositive. To be sure, the extent of the age difference between comparable employees is obviously relevant to the ultimate question of age discrimination.

That Mr. Whittington was only five years older than Mr. Overbey, who kept his job, makes it more difficult for the jury to infer that Nordam discriminated against Mr. Whittington (at least insofar as he is compared to Mr. Overbey) because of his age. But that fact should be but one factor weighed by the jury.

Nordam relies on cases from the Sixth, Seventh, and Eighth Circuits in arguing that we should adopt a bright-line rule that five years is an insignificant difference in age as a matter of law. None of those courts, however, applies such a bright-line rule. The Sixth and Seventh Circuits both allow for other evidence to overcome a presumption that a difference is insignificant. *See Grossjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) ("[I]n the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant."); *Cianci v. Pettibone Corp.*, 152 F.3d 723, 728 (7th Cir. 1998) ("[A]n age disparity of less than ten years is presumptively insubstantial unless the plaintiff directs the court to evidence that her employer considered her age to be significant." (internal quotation marks omitted)). And the Eighth Circuit requires a fact-specific determination. *See Schiltz v. Burlington N. R.R.*, 115 F. 3d 1407, 1413 (8th Cir. 1997) ("*On these facts*, the age disparities do not raise an inference of discrimination . . . ." (emphasis added)); *cf. Hammer v. Ashcroft*, 383 F.3d 722, 726 n.3 (8th Cir. 2004) ("Our Circuit has not decided [whether a six-year age

-18-

difference preludes a prima facie case].") In one case we observed that a two-year age difference was "obviously insignificant," *see Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1166 (10th Cir. 2000), but we did not purport to establish a firm rule outside the context of that case.

In our view, a definitive five-year rule is unjustified. We are not convinced that all five-year age differences are the same. The replacement of a 45-year-old by a 40-year-old would be less suspicious than the replacement of a 62-year-old by a 57-year-old. Comparing a 62-year-old worker with one who is 57, an employer may think it better to retain someone who will stay with the company another eight years (until age 65) rather than one who would be retiring in three years, less than half the time. Or a company may simply wish to rid itself of its older workers, beginning with the oldest.

To the extent that other circuits establish a direct-evidence requirement when the age difference is less than five years, we choose not to follow them. The authorities are legion that circumstantial evidence can be every bit as compelling as direct evidence. *See, e.g., Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 n.17 (1957) (citing *The Robert Edwards*, 19 U.S. (6 Wheat.) 187, 190 (1821)) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."); *United States v. Becker*, 62 F.2d 1007, 1010 (2d Cir. 1933) (Hand, J.) ("The requirement [that the jury be

separately charged as to circumstantial evidence] seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial."); 1A John Henry Wigmore, Evidence § 26 (Peter Tillers rev. 1983) ("Wigmore's view that circumstantial evidence may be as persuasive and as compelling as testimonial evidence, and sometimes more so, is now generally accepted."). We decline to set rigid guidelines and will leave to the jury the evaluation of the evidence, subject as always to the oversight of the district court to refuse to permit unreasonable findings.

## B. Jury Instructions

Nordam raises four challenges to the district court's jury instructions. "[T]he admission or exclusion of a particular jury instruction is left to the sound discretion of the trial court." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 771 (10th Cir. 1999). "We review . . . the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 962 (10th Cir. 2002) (internal quotation marks omitted). "As long as the charge as a whole adequately states the law, the refusal to give a particular instruction is not an abuse of discretion." *McKenzie v. Benton*, 388 F.3d 1342, 1348 (10th Cir. 2004) (internal quotation marks omitted).

### 1. *McDonnell Douglas* Instruction

Nordam challenges the instructions to the jury on the elements and proof requirements for Mr. Whittington's claim. The instructions follow the framework for analysis set forth in *McDonnell Douglas,* 411 U.S. at 802–04. The jury was instructed as follows:

Age Discrimination - Elements
Plaintiff Milton L. Whittington, Sr., seeks damages against Defendant for discharge based on age discrimination in violation of federal law. The Age Discrimination in Employment Act provides in pertinent part that it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:
1. That Plaintiff was 40 years of age or older at the time of the discharge;
2. That Plaintiff was doing satisfactory work;
3. That Plaintiff was discharged despite the adequacy of his work; and
4. That there is some evidence the employer intended to discriminate against him in reaching its reduction in force decision. This element may be shown by circumstantial evidence that Plaintiff was treated less favorably than a younger employee.
Evidence that an employer terminated a qualified older employee but retained younger ones in similar positions is sufficient to meet the fourth element. In order for Plaintiff to establish the fourth element, Plaintiff may establish that Nordam retained younger employees in similar positions.

Legitimate Non-Discriminatory Reason
If Plaintiff fails to prove any of the elements of his age discrimination claim, you must find for Defendant on Plaintiff's age discrimination claim. If, however, Plaintiff persuades you by the greater weight of the evidence of these elements, then you must consider Defendant's defense that its actions regarding Plaintiff's employment were based upon a reasonable factor other than age discrimination. As you consider this, remember that Defendant must only articulate a legitimate, non-discriminatory reason for its

-21-

actions. Here, the reason articulated by Defendant is that it implemented a reduction in force in January 2002.

Pretext
        If Defendant does articulate a legitimate, non-discriminatory reason, you must find for Defendant unless Plaintiff proves, by the greater weight of the evidence, that the legitimate reason offered by Defendant was false and merely an excuse for illegal age discrimination and that the true reason was intentional discrimination. Plaintiff's ultimate burden is to prove that he was a qualified person over the age of 40 and this fact was a motivating factor in Defendant's employment decisions
        In a reduction in force case a Plaintiff can demonstrate pretext in three principal ways:
1. Proof that Plaintiff's termination does not accord with the reduction in force criteria articulated by the employer;
2. Proof that the employer deliberately falsified or manipulated an evaluation of Plaintiff so as to cause him to meet the reduction in force criteria; or
3. Proof that the reduction in force is more generally pretextual.
        If Plaintiff proves that Defendant's stated reason for a decision is unworthy of belief, you may, but are not required to, infer that Plaintiff's age was a motivating factor in Defendant's decisions.

Aplt. App. at 78–82.

In *Messina v. Kroblin Transportation Systems, Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990), we "disapproved jury instructions which delineate the intricacies of *McDonnell Douglas* because a jury is not well equipped to understand the shifting burdens of such a formulation." But the district court, responding to Nordam's criticism of an earlier draft of the instructions,[1] said that its instructions

---

[1]Nordam offered the following alternative instruction, based on 3C Fed.
(continued...)

-22-

satisfied *Messina* 's concerns because it had removed "burden-shifting and legal jargon." Aplt. App. at 180.

*Messina* , however, was concerned about more than just removing jargon. It recognized that the "presumptions and burdens inherent in the *McDonnell Douglas* formulation drop out of consideration when the case is submitted to the jury on the merits." 903 F.2d at 1308. "[T]he important issue is discrimination vel non," and the instructions should not "lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." *Id*.

---

[1](...continued)
Jury Prac. & Instr. § 173.20 (5th ed.):

<u>AGE DISCRIMINATION - ELEMENTS</u>

In order for plaintiff Milton Whittington to prevail on plaintiff's claim against defendant NORDAM for age discrimintion in employment, the plaintiff must prove the following three essential elements by a preponderance of the evidence:
First: That plaintiff was forty years of age or older;
Second: That plaintiff was discharged by defendant; and
Third: That defendant would not have discharged plaintiff but for the plaintiff's age. In other words, the plaintiff's age must have been a determinative factor in NORDAM's decision to lay off the plaintiff.

The mere fact that plaintiff is 40 years of age or older and was terminated is not sufficient, in and of itself to establish plaintiff's claim. . . . You should not find that NORDAM's decision is unlawful just because you may disagree with its stated reasons or because you believe the decision was harsh, unresonable, or mistaken, as long as NORDAM would have reached the same decision regardless of plaintiff's age.

Aplt.'s App. at 101.

-23-

We endorse again *Messina*'s criticism of jury instructions that describe the *McDonnell Douglas* framework, jargon or no jargon. But use of such an instruction does not automatically require reversal. The appellant must establish prejudice. Our concern with a *McDonnell Douglas* instruction is not that it favors one party over another. It is that it unnecessarily complicates the jury's job, and unnecessary complexity increases the opportunity for error. Here, Nordam has not argued that the instructions given were misleading to the jury or otherwise prejudicial to the defense. Accordingly, we have no reason to reverse on this ground.

### 2. Honest-Belief Instruction

Nordam argues that the jury instructions were also flawed because the district court declined to give the "honest belief" instruction sought by the defense. Nordam wanted the jury to be instructed that "if an employer lays off an employee based on an honestly held belief that the employee is less qualified than other employees who were not laid off, the employer is not liable . . . even if the employer's belief was mistaken." Aplt. App. at 101. Nordam claims that such an instruction is mandated by analogy to *Medley v. Polk Co.*, 260 F.3d 1202, 1207–08 (10th Cir. 2001), which held that "an employer who discharges an employee honestly believing that the employee has abandoned her job . . . would

not be in violation of FMLA, even if its conclusion is mistaken, since this would not be a discriminatory firing." *Id.* at 1207.

But even if Nordam is correct that an honest belief of lesser qualification is a defense under the law, it would have been entitled to an instruction only if it had presented evidence at trial sufficient to raise the issue for the jury. *See Brownlow v. Aman*, 740 F.2d 1476, 1490 (10th Cir. 1984) ("[O]nly where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given."). Nordam's explanation at trial was that Mr. Whittington was terminated because he had less seniority than Mr. Overbey, and work performance was not a factor. In rejecting the proposed instruction, the district court explained that "it's confusing, if it doesn't apply, to instruct the jury on an honestly held belief as to a fact when there's no evidence of a mistake as to a fact." Aplt. App. at 191. Nordam makes no effort in its brief to direct us to facts in the record that would support an honest-belief instruction. The refusal to give the instruction was within the sound discretion of the district court.

### 3. Transfer Instruction

Nordam challenges the district court's refusal to instruct the jury that Nordam had no duty to transfer Mr. Whittington to another position. One of the jury instructions stated:

> Refusal to allow an employee to bump less senior employees is not in itself evidence of an Age Discrimination in Employment Act violation. If a job is eliminated, the employer has no duty to allow one employee to bump a less senior, and possibly younger, employee from a different position.

*Id.* at 89. But the district court decided against granting Nordam's request to add that "[r]efusal to transfer an employee to another position also is not in itself evidence of an Age Discrimination in Employment Act violation." *Id.* at 102 (internal quotation marks omitted). The court rejected the addition to the instruction because "[e]very witness testified [that] bumping and transfer is not an issue." *Id.* at 195. Nordam's opening brief contends that the instruction was nonetheless necessary because there was testimony at trial "regarding the rotation of leadpersons to other cells a few months after Whittington's termination." Aplt. Br. at 23.

We reject the challenge to the district court's ruling. The instruction proposed by Nordam merely precluded consideration of transfer *in itself*, but said nothing of permissible inferences from refusal to transfer in combination with other evidence of discrimination. There was such other evidence. Thus, even without Mr. Whittington's explicit renunciation of any claim based on Nordam's failure to transfer, the instruction would have been unhelpful to the jury. The district court did not abuse its discretion in declining to modify the "Refusal to Bump" instruction as requested by Nordam.

### 4. Insignificant-Age-Difference Instruction

Nordam argues that the district court committed error in not instructing the jury that five years is an insignificant difference in age as a matter of law. But we have already rejected such a firm rule in our discussion of the sufficiency of the evidence. The district court instructed the jury that "[a]ge discrimination may not be inferred from different treatment of employees unless the employees are similarly situated under the circumstances and the difference in age between the employees is not insignificant." Aplt. App. at 88. That instruction correctly stated the law. Nothing further was required, and the district court's refusal to give Nordam's proposed instruction was not an abuse of discretion.

### C. Exclusion of Evidence

Nordam contends that the district court committed reversible error in refusing to allow Mr. Miner to testify that tenure with the company was a criterion in subsequent reductions-in-force. Nordam argues that it was prejudiced by the ruling because "the jury was left with the erroneous impression that Nordam singled out Whittington for special, and therefore, discriminatory treatment" through the criteria used in his selection for termination. Aplt. Br. at 25.

"We review a district court's exclusion of evidence for an abuse of discretion. In reviewing a court's determination for abuse of discretion, we will

not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson,* 59 F.3d 1046, 1048 (10th Cir. 1995) (internal citation omitted).

Mr. Miner testified at trial that the choice between terminating Mr. Whittington or Mr. Overbey came down to tenure with the company. The direct examination then continued:

> Q: Okay. In later reductions that occurred in the transparency division, did you get to tenure as a --
> A: Absolutely.

Aplt. App. at 138. Mr. Whittington objected that such later reductions were irrelevant, and the objection was sustained. Nordam requested a bench conference. Outside the jury's presence it argued that the subsequent layoffs were part of a continuing series that started with the January 2002 action, making the criteria used in those later terminations probative of what criteria were applied in January. Then the following exchange occurred :

> THE COURT: And what do you think you're going to get out of him? What do you expect the testimony to be?
>
> [NORDAM'S COUNSEL]: I expect the testimony to be—and I think he already said it—is that in the subsequent layoffs, length of service, tenure with the company became a factor.

*Id.* at 139. Thus, Nordam's proffer was only what was already before the jury. The court ruled, in essence, "thus far and no farther." Noting that Mr. Miner had

-28-

"blurted [it] out . . . ." and "[i]t's on the record," the court ordered only that there be no additional inquiry regarding future layoffs. *Id.* at 141. Because Nordam made no record of what additional testimony it would have provided on the subject, we are unable to determine how it was prejudiced by the court's ruling. As a result, even if the ruling was incorrect, we cannot reverse on this ground. *See United States v. Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) ("Error may not be based on a ruling excluding evidence unless the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked." (internal brackets and quotation marks omitted)). (The court and the parties apparently overlooked that Mr. Whittington's objection had been sustained, perhaps assuming that the jury would not understand the ruling to apply to what had already been said. In any event, Nordam did not suggest to the court that the statement was not in fact "on the record.")

### D. Calculation of Damages

Mr. Whittington cross-appeals the amount of front-pay damages awarded by the district court. Front pay is an equitable remedy awarded by the court (not the jury). *See Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1425–27 (10th Cir. 1991). The amount, if any, is set in the court's discretion as a substitute for

restitution when it is necessary to make the plaintiff whole. *See Abuan*, 353 F.3d at 1176.

> Numerous factors are relevant in assessing front pay including work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost of living adjustment, the reasonable availability of other work opportunities, the period within which the plaintiff may become re-employed with reasonable efforts, and methods to discount any award to net present value.

*Davoll v. Webb*, 194 F.3d 1116, 1144 (10th Cir. 1999). In formulating a front-pay award the district court may consider all evidence presented at trial concerning the individualized circumstances of both the employee and employer, *id*., but it "must avoid granting the plaintiff a windfall," *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir. 1997).

Mr. Whittington does not challenge the district court's award of front pay as a remedy in lieu of reinstatement; he argues only that the amount awarded was too low. Despite Mr. Whittington's testimony at trial that he had intended to work for Nordam until age 70, the district court awarded front pay only until Mr. Whittington's 65th birthday. "Because determining a front pay award requires the district court to predict future events and consider many complicated and interlocking factors, we review such awards with considerable deference, reversing only for an abuse of discretion." *Id*.

-30-

In determining the appropriate amount of front-pay damages, the district court noted that Mr. Whittington's testimony regarding his retirement plans had changed between the first trial (which resulted in a mistrial) and the second trial. During the first trial Mr. Whittington testified that his current plan was to retire at age 65. At the second trial, however, he testified that, *had he remained at Nordam*, he would have waited until age 70 to retire. Mr. Whittington explained the change in plans as resulting from an injury he suffered prior to the first trial at his new, more physically demanding, job in Texas. His testimony at the first trial, he explained, reflected his current plans after suffering the injury. He argues that because he had to take the new job, and hence suffered the injury, as a result of Nordam's wrongful termination, Nordam should be liable for front pay up to the date at which he planned to retire had he remained employed there.

It was not an abuse of the court's discretion to consider Mr. Whittington's first-trial testimony and base its award on the determination that "regardless of [his] previous plans, he currently intends to retire by . . . the month he turns sixty-five." Aplee. App. at 64. Moreover, as noted by the district court, it was "'not bound by the plaintiff's assertion of how long he intends to continue to work.'" *Id*. (quoting *Courtney v. Safelite Glass Corp.*, 811 F. Supp. 1466, 1476 (D. Kan. 1992)). Although no evidentiary hearing was held regarding the award of front pay, the issue was fully briefed by the parties, and Mr. Whittington does not

direct us to a place in the record where he requested that the judge hold such a hearing. Therefore, we deny his request for remand and affirm the district court's calculation of front-pay damages.

**E.    Attorney Fees**

Mr. Whittington applies for an award of attorney fees for defending this appeal. Attorney fees may be awarded to the prevailing party in age-discrimination cases through the ADEA's incorporation of remedies available under the Fair Labor Standards Act.  *See* 29 U.S.C. § 626(b) (incorporating by reference 29 U.S.C. § 216). We have discretion to award appellate attorney fees when we deem it appropriate.  *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1557 (10th Cir. 1988).

Although a prevailing party is not automatically entitled to an award of appellate attorney fees, *Hoyt v. Robson Cos., Inc.*, 11 F.3d 983, 985 (10th Cir. 1993), such an award is warranted in this case. Mr. Whittington has prevailed on every issue of Nordam's appeal. Therefore, we remand to the district court for a determination of reasonable fees incurred in defending Nordam's appeal.  *See id*. ("Should we decide that it is appropriate to award such fees, we may then remand to the district court to determine an award of reasonable fees.").

**III.   CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court on both the appeal and cross-appeal. We REMAND for a determination of reasonable appellate attorney fees to be awarded to Mr. Whittington.