FILED
United States Court of Appeals
Tenth Circuit

January 7, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JACKIE R. WILKINS,

     Plaintiff-Appellant,

v.

PACKERWARE CORPORATION,

     Defendant-Appellee.

No. 06-3400
(D.C. No. 04-CV-4024-KGS)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

Jackie Wilkins, formerly a print operator with PackerWare Corporation,

sought medical attention for what he thought was a work-related injury to his

right arm. His doctor advised him to rest his arm for an extended period, advice

that meant Mr. Wilkins would be unable to perform his regular job duties. Mr.

Wilkins's employer gave him the option either to take unpaid leave or pursue

---

[*] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
The case is therefore ordered submitted without oral argument. This order and
judgment is not binding precedent except under the doctrines of law of the case,
res judicata and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

light-duty work that would not interfere with his doctor's orders. Mr. Wilkins opted for light-duty work, but then repeatedly failed to show up or call in before his shift started. Eventually, PackerWare fired him for excessive, unexcused absences; Mr. Wilkins sued, alleging that PackerWare had violated the Family and Medical Leave Act ("FMLA" or "the Act") and Kansas workers' compensation law. The case went to trial, and a jury returned a verdict in favor of PackerWare on all counts.

On appeal, Mr. Wilkins challenges the propriety of the district court's jury instructions and special verdict form. He argues, among other things, that the district court erroneously required him to establish that he was eligible for leave under the FMLA as a precondition to bringing a retaliation claim, incorrectly defined a "serious health condition" under the Act, and wrongly instructed the jury under the *McDonnell Douglas* burden-shifting rubric. Discerning no reversible error in the district court's conduct of the trial, however, we affirm.

I

A

Mr. Wilkins worked as a print operator at PackerWare from 1989 until he was fired on March 15, 2002. During the entire tenure of his employment, PackerWare maintained a written attendance policy. Under that policy, an employee's unexcused absences resulted in the assessment of various numbers of "points." For example, failure to show up for a shift earned an employee one

point.  Failure to report an absence before the beginning of a missed shift added two more points to the tally.  Leaving early meant a half-point.  Accumulating 9 or more points in one year was grounds for dismissal.

During most of Mr. Wilkins's employment, PackerWare also maintained a leave of absence policy, which included a provision for leave under the FMLA. Prior to the incidents that gave rise to this lawsuit, Mr. Wilkins took periods of FMLA leave, without incident, for his own medical conditions and to care for his wife.  Mr. Wilkins also received workers' compensation benefits for various, minor, job-related injuries.  Following all such past instances of leave, he returned to his regular job duties.

During the evening shift on March 4, 2002, Mr. Wilkins reported that his ongoing wrist pain, which he believed to be work-related, had become acute.   He sought treatment at a hospital that night and saw a doctor the next day.  The doctor ordered Mr. Wilkins to restrict movement of his right arm and scheduled a follow-up appointment.  Mr. Wilkins promptly met with PackerWare's benefits coordinator, Deanna Hemming, who determined that Mr. Wilkins could not perform his regular job duties consistent with the doctor's advice, and therefore offered Mr. Wilkins the choice of a different, light-duty position in another

department or leave without pay until he could return to his regular job.[1]  Mr. Wilkins chose to take the light-duty shift.

On Thursday, March 7, 2002, the day he was supposed to begin light-duty work, Mr. Wilkins telephoned Ms. Hemming an hour after his shift started.  Mr. Wilkins left a message saying that he was not coming to work and that he would begin light-duty work the following Monday, March 11, 2002.  Mr. Wilkins neither called nor worked on Friday, March 8.  On March 11, Mr. Wilkins again called Ms. Hemming approximately an hour after his shift began and left a message saying that he was not coming to work.  In neither that message, nor the message of March 7, did he explain the reasons for his absence.  Mr. Wilkins reported to work on Tuesday, March 12 on time, but he clocked out early for a doctor's appointment three hours later.

The next day, PackerWare suspended Mr. Wilkins and, two days after that, on March 15, it terminated his employment.  According to PackerWare's records, Mr. Wilkins had accumulated 14.5 attendance points, well more than the 9 that supplies grounds for dismissal under the company's policy.  Of these 14.5 points, 6.5 were incurred in the final days of Mr. Wilkins's employment – 3 for failing to come to work without advance notification on March 7; 3 for failing to come to work without advance notification on March 11; and 0.5 for leaving early on

---

[1]  Under the FMLA, leave may be without pay, 29 U.S.C. § 2612(c), and Mr. Wilkins does not argue that PackerWare violated either the FMLA or the Kansas Workers Compensation Act by offering him unpaid leave.

March 12.  Mr. Wilkins was assessed no attendance points for the absence of March 8, which Ms. Hemming treated as an exercise of the option to take unpaid leave.   On March 19, Mr. Wilkins participated in a termination review arranged by PackerWare and conducted by two of its managerial employees.  Those managers concluded that Mr. Wilkins was properly assessed points for his absences and that the company's policies had been followed.

B

Following PackerWare's internal review, Mr. Wilkins brought this suit in the District of Kansas.  Eventually, the case went to trial on three counts, with Mr. Wilkins asserting that PackerWare unlawfully (1) retaliated against his decision to take leave, in violation of the FMLA; (2) denied him leave under the FMLA; and (3) retaliated against him for asserting his rights under the Kansas Workers Compensation Act.  In turn, PackerWare defended its actions primarily on three grounds.  First, it argued that Mr. Wilkins did not qualify for FMLA leave, and that he was therefore neither denied a statutory right nor retaliated against for exercising one.  Second, PackerWare asserted that Mr. Wilkins was fired not for taking or attempting to take any sort of protected leave, but for violating its attendance policy.  Finally, PackerWare argued that, even if Mr. Wilkins was entitled to leave, it had no notice that he wished to take such leave, as Mr. Wilkins had volunteered to take an alternate, light-duty position, rather

than the unpaid leave offered him, and then simply did not show up for work as promised.

The jury returned a verdict in favor of PackerWare on all counts. Mr. Wilkins filed timely motions for judgment as a matter of law and for a new trial. The district court denied those motions and this appeal followed. In it, Mr. Wilkins challenges certain aspects of the district court's jury instructions as legally erroneous and certain aspects of the jury's verdict as internally consistent; we here address the most material of Mr. Wilkins's challenges.

II

Beginning with Mr. Wilkins's challenge to the district court's jury instructions, we are obliged to note at the outset that only a few of his arguments were ever presented to the district court for its consideration. Where Mr. Wilkins did raise an objection before the district court, we may review the contested instruction *de novo* to determine whether the instructions, when viewed as a whole, properly advised the jury of governing law. We will reverse under this standard "when (1) we have substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations; and (2) when a deficient jury instruction is prejudicial." *Williams v. W.D. Sports*, 497 F.3d 1079, 1093 (10th Cir. 2007) (internal quotation and citation omitted). To be prejudicial, the error must be more than what we have described as "harmless" or "immaterial"; that is, it must be of sufficient import that it fairly could be described as having

changed the trial's result.  *See Lusby v. T.G. & Y. Stores, Inc.*, 796 F.2d 1307,

1310 (10th Cir. 1986); *see also* 28 U.S.C. § 2111; Fed. R. Civ. P. 61; 11 Wright

& Miller, Fed. Prac. & Proc. Civ.2d § 2886.

By contrast, where Mr. Wilkins failed to object before the district court, we

may reverse the district court's instructions only in the presence of plain error.

*W.D. Sports*, 497 F.3d at 1094; Fed. R. Civ. Pro. 51(d)(2).  Under that standard,

we will disturb the district court's judgment only if Mr. Wilkins can (1) show

error that was (2) plainly evident, (3) affected his substantial rights, and

(4) seriously affected the fairness, integrity, or public reputation of the judicial

proceedings.  *United States v. Torres-Laranega*, 476 F.3d 1148, 1154 (10th Cir.

2007).

A

Instruction 15 advised the jury that in order to succeed on his FMLA

retaliation claim Mr. Wilkins had to prove, by a preponderance of the evidence,

that:  (1) he suffered from a "serious health condition"; (2) he gave PackerWare

"proper 'notice' of the need to be absent from work"; (3) he was discharged from

employment; and (4) his absence from work was a substantial or motivating factor

that prompted PackerWare to take action.  Aplt's App. at 381.

On appeal, Mr. Wilkins argues that the district court should not have

required him to establish elements (1) and (2).  To be sure, Mr. Wilkins does not

dispute that his *eligibility* for FMLA leave was dependent on the presence of both

a serious health condition and proper notice to his employer. Rather, he contends that he should not have been required to prove his eligibility for leave in order to pursue a claim for *retaliation*. As a matter of law, he claims, an employee engages in "protected activity" for purposes of an FMLA retaliation claim whenever he or she *asserts* an FMLA right, even if it later emerges that the employee is *not actually eligible* for leave.

Mr. Wilkins did not raise this argument before the district court, so we may reverse only in the presence of plain error. But far from being an obvious or evident point of law, the legal position Mr. Wilkins advances appears to implicate what is very much an open question in this circuit.

On the one hand, in a somewhat analogous context we have held the law to be as Mr. Wilkins proposes – namely, that "in order to prosecute an [Americans with Disabilities Act] retaliation claim, a plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001). And such an approach might be argued to make sense in the FMLA context as well. If, for example, an employee took time off to care for an ailing spouse, 29 U.S.C. § 2612(a)(1)(C), only to discover that the spouse had been misdiagnosed and did not suffer from a serious health condition, it would arguably serve to defeat the purpose of the statute to allow the employer to fire the employee on the basis of a doctor's misdiagnosis.

On the other hand, it is not unlawful under the FMLA for an employer to fire an employee for requesting or taking leave for purposes other than those described by the Act. The FMLA protects an employee's leave only (A) for the birth of, and to care for, a child, (B) for the adoption or assumption of foster care of a child, (C) to care for an immediate family member suffering from a serious health condition, or (D) for the employee's own serious health condition, which makes it impossible for him or her to work. 29 U.S.C. § 2612(a)(1). And this leave is limited to "eligible employees," who have worked for the employer for at least 12 months and have worked at least 1,250 hours in those 12 months. *Id.* § 2611(2)(A). An employee thus cannot claim protection under the Act merely by asserting that he or she wishes to take FMLA leave, and then, say, be free to vacation in Hawaii, without fear of adverse consequences. Our precedent may also be read to prefigure the conclusion that the lawful taking of FMLA leave is a prerequisite to a retaliation claim, *see Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) ("a retaliation claim may be brought when the employee *successfully took FMLA leave . . .*") (emphasis added), as might the decision of at least one of our sister circuits, *see Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (rejecting the argument that the "FMLA protects a request for FMLA leave regardless of whether the employee would be eligible for the leave," and expressly holding that "the statute does not protect an attempt to exercise a right that is not provided by FMLA").

As these competing arguments for and against Mr. Wilkins's position suggest, the question whether the district court's instruction was erroneous is open and contestable – which by its very definition cannot qualify as *plainly evident* error. Accordingly, under our standard of review, we are in no position to disturb the district court's judgment on the guidance provided to the jury in Instruction 15, *see Torres-Laranega*, 476 F.3d at 1154, and we need not decide whether one must actually be eligible for FMLA leave to bring a claim for retaliation under the Act.

B

Mr. Wilkins next complains about two definitions offered by the district court in Instruction 16. Seeking to elucidate certain of the terms employed in Instruction 15, the court fashioned Instruction 16 to clarify for the jury that, in order to show that he provided the "proper notice" required by Instruction 15, "Plaintiff is required to provide such notice as practicable." Aplt's App. at 383. Separately, in order to establish that he suffered from a "serious health condition," Mr. Wilkins had to prove he suffered from "an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or residential medical facility or continuing treatment by a healthcare provider." *Id.* at 382. The court added that the serious health condition "must have resulted in plaintiff having an inability to perform *assigned*

*work* for a period of more than three consecutive calendar days." *Id.* (emphasis added).

1.     Mr. Wilkins asserts that, even if the district court was right to give a notice instruction to the jury at all, Instruction 16 erred in describing the sort of notice he was required to give in order to become eligible for FMLA leave. Because he did not challenge the instruction on this score before the district court, we can review the claim only for plain error.

The notice language about which Mr. Wilkins complains in Instruction 16 largely tracks Department of Labor ("DOL") regulations implementing the FMLA. *Compare* 29 C.F.R. § 825.303(a) (requiring that notice be given "as soon as practicable under the facts and circumstances of the particular case," when advanced notice is impossible) *with* Instruction 16 (requiring "such notice as practicable," when advanced notice is impossible). While this circuit does not appear to have passed on this particular regulation, we have previously held that challenged DOL regulations implementing the FMLA are entitled to *Chevron* deference, as the DOL is charged with administering the statute. *See Hackworth v. Progressive Cas., Ins. Co.*, 468 F.3d 722, 726-27 (10th Cir. 2006). Because Mr. Wilkins does not challenge the relevant regulation, we assume without deciding for the purposes of this case that the regulation is a permissible implementation of the Act and is entitled to deference.

Nevertheless, Mr. Wilkins asserts the district court should have advised the jury that notice was required "within one or two working days except in extraordinary circumstances." Aplt's App. at 351; Aplt's Op. Br. at 42. And, to be sure, the DOL regulation itself does indicate that practicable notice will usually come "within no more than one or two working days." 29 C.F.R. § 825.303(a). But confining the period for notice to one or two working days may actually be *less* favorable to a plaintiff than the instruction actually given, focusing more broadly as it does on the question whether notice would have been practicable. Further, Mr. Wilkins's proposed instruction actually contradicted the "one or two working day" policy advanced by DOL. Under the DOL policy, the "one or two working day" window commences after the time the employee learns of his or her *need* for leave – not after the employee has already *begun taking* leave, as Mr. Wilkins argues. *Compare* 29 C.F.R. § 825.303(a) ("within no more than one or two working days *of learning of the need for leave . . .*") (emphasis added) *with* Aplt's App. at 405 ("proper notice during a period of up to two days *after the absence*") (emphasis added). Unable to point to the DOL regulation for support, Mr. Wilkins likewise points us to no other legal authority in the FMLA or elsewhere to suggest that his proffered instruction would have been legally

-12-

appropriate. Accordingly, we are given no reason to find error, let alone plain error, in the district court's chosen path.[2]

2.    With respect to the district court's definition of "serious health condition," Mr. Wilkins argues primarily that the relevant inquiry should not have been whether his medical condition was so serious that it precluded him from performing "*assigned* work," but whether it was sufficiently grave that it precluded him from performing his *usual* work, *i.e.*, the work required for his normal position before his (voluntary) reassignment to light-work duty. Mr. Wilkins contends that the FMLA's focus is and should be on his ability to perform his own job, and that any other rule would penalize him for voluntarily assuming alternative work. Mr. Wilkins objected to Instruction 16 on this basis before the district court and so our review is *de novo*.

We need not, however, pass today on the legal question presented by Mr. Wilkins. Even assuming, without deciding, that the district court's definition of serious health condition was in error, Mr. Wilkins cannot be said to have been prejudiced by it. We have already found no reversible error in the district court's notice instructions, instructions that treated notice as an independent and essential

---

[2] Separately, Mr. Wilkins argues, as he did in his post-trial motions, that PackerWare "did not dispute that it had proper notice within the meaning of the FMLA," and therefore it was error to include the second element of Instruction 15. Aplt's Op. Br. at 43-44. But, as the district court concluded, notice was in fact highly contested at trial, with the witnesses for each side giving very different accounts of what notice was actually provided and when. *See* Sept. 29, 2006 Dist. Ct. Mem. & Order at 24 (Aplt's App. at 613).

element of Mr. Wilkins' claim. *See supra* Parts II.A & B.1. With the jury's express finding against him on that element, reflected in its answer to the court's special interrogatory, there was no need for the jury to reach the analytically subsequent question whether Mr. Wilkins suffered from a serious health condition. That is, having failed on what was lawfully treated by the district court as a distinct and antecedent element, any putative error in an instruction on a later element is simply beside the point.[3]

C

Instruction 17 advised the jury that, even if Mr. Wilkins proved the elements for a retaliation claim set forth in Instruction 15 by a preponderance of the evidence, the jury must find for PackerWare on the retaliation claim if the company "articulated a legitimate, non-retaliatory explanation for the adverse employment action taken," and Mr. Wilkins could not show that explanation to be "merely a pretext for impermissible retaliation." Aplt's App. at 384. Mr. Wilkins objected to this instruction at trial on the same basis that he now argues it was in error: namely that it confused the jury by describing the *McDonnell Douglas*

---

[3] Separately, Mr. Wilkins argues that the district court erred in instructing the jury that "Plaintiff cannot rely solely on his own assessment of his health" to demonstrate that he suffers from a serious health condition. Aplt's Op. Br. at 19-20; Aplt's App. at 382. But Mr. Wilkins not only did not object to this portion of Instruction 16, he actually argued for it. *See* Aplt's App. 541-42. Accordingly, any error is invited error and cannot be challenged on appeal. *United States v. Shaffer*, 472 F.3d 1219, 1227 (10th Cir. 2007).

burden-shifting framework.  We review the district court's decision to instruct the jury in this manner *de novo*.

In doing so, we readily acknowledge that Mr. Wilkins is correct that we have previously criticized charging a jury on the intricacies of *McDonnell Douglas* "jargon."  *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 997-98 (10th Cir. 2005); *see also Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1221-28 (10th Cir. 2003) (Hartz, J., concurring); *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1122 (10th Cir. 1991) (Seth, J., concurring).  While *McDonnell Douglas* provides a legal analytic tool for assessing pre-trial discrimination challenges, at trial the question "is discrimination *vel non*," and introducing the intricacies of the *McDonnell-Douglas* burden shifting framework to jurors risks causing them "to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." *Messina v. Kroblin Transp. Systems, Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) (internal quotation omitted).

Still, we have indicated that the problem is *not* that the *McDonnell-Douglas* framework is unduly prejudicial to one party over another.  Rather, "[i]t is that it unnecessarily complicates the jury's job, and unnecessary complexity increases the opportunity for error."  *Whittington*, 429 F.3d at 998.  Because the introduction of the framework is not *per se* prejudicial to either side, the "use of such an instruction does not automatically require reversal."  *Id.*  Instead, we will

-15-

reverse only when there is evidence that the instruction, as given, was misleading to the jury or otherwise prejudicial. *Id.* After reviewing Mr. Wilkins's briefs and the record, we are afforded no reason to think that the use of the *McDonnell Douglas* framework misled the jury or otherwise proved prejudicial in this case. Accordingly, without some reason to differentiate this trial from the many in which we have allowed the jury verdict to stand in spite of the introduction of the *McDonnell Douglas* framework, we are bound by our precedent to treat the error as harmless.[4]

D

Turning to Mr. Wilkins's state law workers' compensation claim, the district court indicated in Instruction 19 that Mr. Wilkins had to satisfy four elements – namely that (1) he sustained a compensable injury on the job; (2) PackerWare knew about it; (3) PackerWare fired Mr. Wilkins; and (4) there was a causal connection between his termination and his exercise of statutory rights. *See* Aplt's App. at 386; *Rebarchek v. Farmers Co-op. Elevator*, 35 P.3d 892, 899 (Kan. 2001). Mr. Wilkins argues that the district court should have

---

[4] Our holding on this score applies with equal force to Mr. Wilkins's complaint about the district court's use of the *McDonnell Douglas* framework when advising the jury about his state law workers' compensation claim (Instruction 20), and his complaints about the special verdict form relating to Instructions 17 and 20. Though Mr. Wilkins charges that the district court erroneously instructed the jury pursuant to *McDonnell Douglas* on his FMLA interference claim (Instruction 18), as well, this is simply not the case; Instruction 18 merely (and correctly) announces the elements of a FMLA Interference claim with no traces of the *McDonnell Douglas* burden-shifting framework.

instructed the jury only on the final element because PackerWare did not "dispute the first three elements of the prima facie showing of retaliatory discharge." Aplt's Op. Br. at 27. Mr. Wilkins did not object to Instruction 19 on this ground in the district court, so our review is for plain error only.

There was no error at all. In support of his contention that PackerWare conceded away all but one of the elements in Instruction 19, Mr. Wilkins cites only to an oral statement made by counsel in the context of PackerWare's motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure in which counsel made, at most, a concession that a triable question of fact existed on one element of the *prima facie* case. *See* Aplt's App. at 507 (PackerWare conceding, "for the purposes of [it's Rule 50] motion that probably temporal proximity alone has raised a jury issue as to liability"). During the trial itself, PackerWare did not remotely concede away any of the elements listed in Instruction 19, and the district court's instruction thus properly held Mr. Wilkins to his proof. To acknowledge that a jury issue has been raised is hardly a concession that the jury need not make a factual finding on an essential element of plaintiff's claim. On top of all this, Mr. Wilkins's own proposed jury instruction contains virtually the same four elements as those in the instruction actually given to the jury, *compare* Aplt's App. at 342 *with id.* at 386, with the one small difference in verbiage being nothing to which Mr. Wilkins objected, either before us or below. Accordingly, any conceivable error associated with the

-17-

district court's introduction of those elements (and we see none) would be invited error.  *Shaffer*, 472 F.3d at 1227.

## III

Beyond his challenges to the district court's jury instructions, Mr. Wilkins contends that the jury's verdict contains internally inconsistent answers. Specifically, Mr. Wilkins asserts that the jury's answer to the first special interrogatory on his state law workers' compensation claim – finding that he had not sustained an injury for which he could assert a future claim for workers' compensation – is inconsistent with its subsequent answer that PackerWare had knowledge of Mr. Wilkins's injury.  To the question whether or not Mr. Wilkins "sustained an injury on the job for which he could assert a future claim for worker's compensation benefits," the jury answered "no."  Aplt's App. at 413. To the question whether PackerWare "had knowledge of [Mr. Wilkins's] injury," however, the jury answered "yes."  Aplt's App. at 413.

When faced with answers to a special verdict form that might be in conflict, our precedent obliges us when possible to reconcile them rather than assume an internally inconsistent verdict.  *Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1347 (10th Cir. 1989) ("It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them.  Where there is a view of the case that makes the jury's answers to special interrogatories consistent,

-18-

they must be resolved that way.") (internal citation and quotation omitted).  We are able to do so in this case.

It seems to us entirely plausible that the jury believed that Mr. Wilkins had *some* injury of which PackerWare had knowledge, but did not believe that the injury was one for which he could assert a future claim for compensation under the Kansas Workers Compensation Act.  Indeed, it appears undisputed that Mr. Wilkins injured his arm and that PackerWare knew of this injury.  What *was* disputed was whether this injury entitled to him to workers' compensation.  In this case, the jury could well have found that Mr. Wilkins could not be compensated under the Kansas compensation scheme after he voluntarily assumed light-duty work, but still find that PackerWare knew Mr. Wilkins had an injury (though not one that precluded him from performing the light-duty work for which he volunteered).  When he failed to show up for work after choosing to assume a new position, Mr. Wilkins would not have been fired for taking protected leave – the ultimate issue to be decided in this case, Aplt's Op. Br. at 45 – but for being absent *without* leave.  While certain of the questions on the special verdict form may be assailed with the benefit of hindsight, the jury's responses to them can fairly be reconciled.

* * *

-19-

Because we discern no reversible error in the district court's instructions and no barrier to reading the jury's verdict harmoniously, the judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge