Argued and submitted September 28, 2020, reversed and remanded
July 14, 2021

BENEFICIAL OREGON, INC.,
*Plaintiff,*
*and*

U.S. BANK TRUST, N.A.,
as Trustee for LSF9 Master Participation Trust,
*Plaintiff-Respondent,*
*v.*

Henry L. BIVINS,
Janet M. Bivins, William C. Tacy,
and Bendy L. Tacy,
*Defendants-Appellants,*
*and*

ERNIE'S CARDLOCK, LLC, et al.,
*Defendants.*

Linn County Circuit Court
15CV12427; A169701

496 P3d 1104

In this foreclosure proceeding, defendants appeal a summary judgment entered in favor of plaintiff that foreclosed the trust deed and declared the amount of unpaid principal, interest, and other amounts owed under a line of credit agreement. Defendants argue that the trial court erred by concluding there were not disputes of material fact about the amount owed under the credit agreement and by concluding that plaintiff was entitled to judgment as a matter of law. *Held*: The plain terms of the credit agreement tied defendants' obligation to make periodic payments on the loan to receipt of statements provided by plaintiff. As there was conflicting evidence in the record about if, and when, plaintiff delivered the required statements to defendants, a reasonable factfinder could have doubts about the precise amount defendants owed. Therefore, it follows that plaintiff did not establish it was entitled to summary judgment.

Reversed and remanded.

Fay Stetz-Waters, Judge. (Judgment)

David E. Delsman, Judge. (Corrected Judgment)

Matthew N. Miller argued the cause for appellants. Also on the briefs was Lindsay Hart, LLP.

Thomas N. Abbott, California, argued the cause for respondent. Also on the brief were Cody M. Weston and Perkins Coie LLP.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

This is an appeal from a judgment in plaintiff's favor, entered on summary judgment, in a proceeding to foreclose on a trust deed securing a line of credit. In the judgment, the trial court foreclosed the trust deed and declared that "[t]he total amount of unpaid principal balance, interest, and other amounts owed is $149,690.66." Among other things,[1] defendants assign error to the court's determination that there were not disputes of fact about the amounts owed on the line of credit and that plaintiff was entitled to judgment as a matter of law as to the amount owed. We agree and, therefore, reverse and remand.

"We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Thompson v. Portland Adventist Medical Center*, 309 Or App 118, 121, 482 P3d 805 (2021). In so doing, we view the facts in the light most favorable to the nonmoving parties—in this case, defendants—and examine whether no objectively reasonable juror could find in their favor on the question at issue. *Id*. In determining whether a moving party is entitled to summary judgment, we examine "the pleadings, depositions, affidavits, declarations, and admissions on file." ORCP 47 C. Because, at trial, plaintiff would have the burden of proof on the point of the amount due, the question is whether the evidence is such that all objectively reasonable factfinders would have to find in plaintiff's favor on that point. *Wieck v. Hostetter*, 274 Or App 457, 470, 362 P3d 254 (2015) (where party that would have burden of proof seeks summary judgment on that point, "our task on appeal, as circumscribed by our standard of review, is to determine whether the uncontroverted evidence presented by [the party] in support of [the] motion for summary judgment is such that all reasonable factfinders would have to find in" that party's favor on the point).

We state the relevant facts in accordance with our standard of review. In 1996, defendant Janet Bivins and her

---

[1] Defendants raise three other assignments of error that we reject as not preserved.

husband, Henry Bivins (who died during the pendency of this proceeding), entered a "credit line account agreement" with Beneficial Oregon, Inc. (plaintiff[2]), in connection with a $77,000 "initial advance."[3] They granted a "line of credit deed of trust" to plaintiff the same day, to secure their obligation on the line of credit. The agreement's terms and conditions explained that the Bivinses were promising to pay a variable amount that would be specified on a statement by the due date specified on the statement:

> "**PROMISE TO PAY:** You promise to pay the Principal Balance, as well as the **Finance Charge**, any additional charges, and any applicable insurance charges. These amounts are due as Minimum Payments, defined below. You agree to pay the Minimum Payment specified on the Statement of Account by the Due Date set forth therein.

> "* * * * *

> "**PAYMENT AMOUNT:** For purposes of this initial disclosure, the Payment Amount indicated on Page 1 of this Agreement was calculated based on the Initial Advance, using the indicated Amortization Basis, and assuming a 30 day billing cycle. The Payment Amount indicated on subsequent Statements of Account may vary from this initial Payment Amount because of differences in the number of days in the billing cycle, as a result of you cashing a Credit Line Account Check, or by reason of a change in the **Finance Charge** rate.

> "* * * * *

> "**MINIMUM PAYMENT:** The Minimum Payment Due on the Account is the sum of (a) the Payment Amount, (b) any monthly insurance charges, (c) any additional charges such as Annual Charges, Delinquency Charges,

---

[2] After Beneficial initiated this proceeding, it transferred the Bivinses' account to Caliber Home Loans, Inc., and U.S. Bank Trust, N.A., as trustee for LSF9 Master Participation Trust. The trust was then substituted as plaintiff. For ease of reference, we generally refer to Beneficial as plaintiff although, as noted, the trust currently is the plaintiff in this proceeding by virtue of the substitution.

[3] The judgment on appeal was entered against two additional defendants, Bendy and William Tacy. Bendy Tacy is the Bivinses' daughter and had a power of attorney for them. At the summary judgment hearing, counsel for plaintiff argued that the Tacys should not be part of the case anymore and that they were not in a position to oppose the summary judgment motion. Ultimately, though, they were included as parties on the judgment entered in plaintiff's favor and, therefore, are properly parties to this appeal.

> Dishonored Check Charges, Overlimit Charges and (d) any amounts past due (insurance charges, **Finance Charge**, additional charges and Principal)."

(Uppercase and boldface in original.) The agreement provided further that the Bivinses would be in default if, among other things, they "fail[ed] to meet the payment terms" quoted above.

Over time, the Bivinses made a number of payments on the line of credit; according to them, they have paid approximately $88,000.00. They were not always able to make their payments, however, and several times worked out deals with plaintiff. The last deal was reached in 2009, at which point the Bivenses paid $15,523.06 to plaintiff. In connection with that arrangement, the Bivenses' lawyer wrote a letter to plaintiff with a request: "Because the payments under this agreement may fluctuate due to a variable interest rate[,] I request that you send monthly written statements to the Bivinses, so that they will know the correct payment each month, as required by [the Real Estate Settlement Procedures Act]." The letter provided a Meridian Road address—the address of the property securing the line of credit—as the address for the Bivinses.

Notwithstanding that request by the attorney, it appears that Beneficial did not send statements to the Meridian Road address. In a 2016 correspondence with the Civil Enforcement Division of the Oregon Department of Justice about the issue after Janet Bivins complained about the missing statements, plaintiff explained how it credited the Bivinses' 2009 payment, and stated that, "We apologize for Mrs. Bivins not receiving statements on her account." Plaintiff stated that its "review of her account does not reflect that she sent us correspondence after her 2009 foreclosure ended to request billing statements, nor did we receive any calls regarding the matter." Noting that Janet Bivins represented that she had spoken to branch employees about the statements, plaintiff stated further that it was "unable to validate any conversations that took place with branch employees" about the lack of statements because it closed its branch offices in 2009. Finally, plaintiff represented that, "on May 8, 2014, after Mrs. Bivins's account migrated to our

new servicing system," Beneficial began sending statements to a post office box that it had on file, but that those statements were "returned as undeliverable."

In May 2015, plaintiff filed the present foreclosure proceeding. The complaint alleged that the Bivinses were "in default beginning with the payment due on February 1, 2010, and all payments thereafter." Later, in a motion for judgment on the pleadings, plaintiff represented that the default occurred on April 15, 2015. In a later motion for summary judgment against defendants' counterclaims, plaintiff represented that the Bivinses had not made payments since November 29, 2009.

Eventually, plaintiff moved for summary judgment on its claims. Plaintiff asserted that there were no disputes of fact and, in particular, that the Bivinses were in default as of February 1, 2010, and owed $149,690.66, including $76,892.50 in principal and $43,797.67 in interest.

Defendants opposed the motion.[4] Janet Bivins's primary argument at the hearing on the motion was that plaintiff had not demonstrated that it was entitled to the amount claimed because it had not been sending statements, and the Bivinses' obligation to pay under the terms of the credit line agreement was tied to the amounts reflected on the statements. The trial court rejected that contention, reasoning that the Bivinses could have checked their account online to find their statements. As noted, the court ultimately granted summary judgment to plaintiff.

On appeal, defendants reiterate the argument that plaintiff's ongoing failure to supply statements after 2009 creates a factual dispute as to the total amount owed on the line of credit, given the nature of the parties' agreement.

---

[4] Bendy Tacy filed a written response, ostensibly on behalf of all defendants. Plaintiff objected on the ground that all defendants were self-represented, that Tacy could not represent the other defendants, and that not all defendants signed the response. The court stated that it would not consider the response, but later appeared to consider it. Regardless, Janet Bivins argued against the motion in the hearing, and the pertinent documents—in particular, Beneficial's letter to the Oregon Department of Justice about the Bivinses' statements—appear elsewhere in the trial court file. Therefore, the documents and her arguments are appropriately considered in assessing whether plaintiff has demonstrated the absence of a dispute of fact as to the amount due.

Defendants also make an unpreserved contention that plaintiff's failure to supply statements and a full accounting of what had happened with the payments that defendants made violates ORS 86A.183(1)(c). Plaintiff responds that defendants' contentions are not preserved, that defendants did not contest the default or amount due below, that defendants' contentions were rejected in a previous unappealed limited judgment rejecting their counterclaims, and that, in all events, there is no dispute of fact about how much defendants owe in total.

We disagree that defendants' contention is not preserved. As noted, the focus of Janet Bivins's arguments at the hearing was that the absence of the statements created a dispute about the amount due. Defendants characterize it aptly in their reply brief: "At every step of this lawsuit, [defendants] argued that they do not know how much was owed because no one would tell them." We also disagree that the issue was resolved against defendants at the time the court rejected defendants' counterclaims and affirmative defenses. As defendants also point out in their reply brief, "those counterclaims sought to declare the note satisfied. That is vastly different from insisting that [plaintiff] must account for their payments before it forecloses."

That leaves the merits. Keeping in mind that it would be plaintiff's burden at trial to prove the amount owed by defendants, the question is whether the evidence on file is such that all objectively reasonable factfinders would have to find that the amount due to plaintiff is $149,690.66. On this record, a reasonable factfinder could easily doubt that the amount claimed is correct under the parties' agreement.

The plain terms of the parties' credit line agreement ties defendants' payment obligations to the receipt of statements. Yet the record gives reasons to doubt that plaintiff was supplying defendants with the statements necessary to trigger their payment obligations. Plaintiff's letter to the Oregon Department of Justice could cause a reasonable factfinder to doubt that plaintiff regularly transmitted statements to defendants after 2009, something that, under the terms of the parties' agreement, could affect the computation of the charges included in the minimum payment.

For example, the Bivinses promised to pay the amount specified on the statement by the "Due Date set forth therein." The failure to issue a statement would mean there would be no due date that could trigger late charges. Finally, plaintiff's conflicting representations about the date of default could give rise to doubts about whether the amount claimed to be due was correct under the terms of the line-of-credit agreement. In other words, given that defendants' payment obligations could vary from statement to statement and were specifically tied to statements, and the evidence that, after 2009, plaintiff did not always send statements to the Bivinses, a reasonable factfinder could have doubts about how much, precisely, the Bivinses owed on the line of credit at the time of foreclosure, particularly given the absence of evidence from plaintiff about how plaintiff's statement-issuing practices bore on the computation of the amount due.

In reaching a contrary conclusion, the trial court reasoned that the Bivinses could have used a computer to visit plaintiff's website to check their statements. Leaving aside the fact that there is no evidence to support a conclusion that the Bivinses had agreed to that type of paperless arrangement after their lawyer had requested that plaintiff send them statements at their Meridian Road address, there is no evidence that would support a finding that, had the Bivinses checked their account online, they would have found statements. On this record, it is not clear that plaintiff regularly issued statements to defendants between 2009 and 2014. Thus, the fact that the Bivinses did not look for (possibly nonexistent) statements through an online account does not mean that plaintiff established that it is entitled to summary judgment as to amount that the Bivenses owe.

Reversed and remanded.