390 September 10, 2025 No. 809

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Holly COOPER,
*Plaintiff-Appellant,*

*v.*

ROBERT G. RUST, JR., D.M.D., PC;
Robert Rust, Jr.; and Traci Rust,
*Defendants-Respondents.*

Lane County Circuit Court
21CV36278; A179367

Karrie K. McIntyre, Judge.

Argued and submitted October 18, 2024.

Richard B. Myers argued the cause and filed the briefs for appellant. Also on the opening brief was Bennett Hartman, LLP.

Matthew E. Malmsheimer argued the cause for respondents. Also on the brief were Chris Lundberg and Haglund, Kelley LLP.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

## PAGÁN, J.

In this wrongful termination case, plaintiff appeals from a grant of summary judgment in favor of defendants. Plaintiff, who was diagnosed with cancer, alleged that she was fired by the dental office she worked for because of her diagnosis and treatment. She sued the dental office and its owners, alleging retaliation and discrimination based on disability. On appeal, plaintiff asserts that the trial court erred in granting summary judgment on four of her claims, and we agree that the trial court erred on each. We conclude that the trial court used the wrong legal standard on plaintiff's sick time retaliation claim under ORS 653.641; we also clarify that an employee is protected under the sick time retaliation law even if they are ineligible for sick time. The trial court erred in granting summary judgment on plaintiff's discrimination claim under ORS 659A.109 by concluding that plaintiff did not ask for an accommodation because there is a genuine issue of material fact as to whether plaintiff requested accommodation. The trial court erred on plaintiff's discrimination claim under ORS 659A.112 by concluding that her disability-induced absences disqualified her from the position. Lastly, we accept defendants' concession that the owners of the dental practice may be held liable if the practice is held liable.[1] Accordingly, we reverse and remand on all claims before us.

## I.  BACKGROUND

"We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted). In so doing, "we view the facts in the light most favorable to the nonmoving parties," and we "examine whether no objectively reasonable juror could find in their favor on the question at issue." *Id.* In making that determination, "we examine 'the pleadings, depositions, affidavits, declarations, and admissions on

---

[1] Because defendants concede error on assignment of error two, we discuss plaintiff's first, third and fourth assignments before discussing the concession last.

file.'" *Id.* (quoting ORCP 47 C). We recount the facts in light of the standard of review.

Defendant Dr. Robert Rust is the sole practitioner of the eponymous Rust Dental practice in Eugene. He owns the practice alongside his wife, defendant Ms. Traci Rust. Ms. Rust had no formal role in the practice but would from time-to-time act as its hiring manager and otherwise assist its operation. We refer to Dr. Rust, Ms. Rust, and Rust Dental collectively as defendants. In April 2021, Rust Dental hired plaintiff to be the practice's office manager. Only a few weeks into the job, in May, plaintiff was unexpectedly diagnosed with breast cancer. Plaintiff eventually under-went major surgery on June 25, which required a period of extended recovery. Dr. Rust granted plaintiff an extended leave. Plaintiff returned to work on July 26.

Soon after, plaintiff developed complications, neces-sitating emergency surgery on August 2, with further sur-gery planned for the next week. Plaintiff requested time off work, but defendants demurred. On August 7, a Saturday, Dr. Rust and Ms. Rust called plaintiff, asked what she wanted to do, to which she replied "I don't know," and then pressured her to quit. On Monday August 9, plain-tiff attended an appointment to prep her for further sur-gery that Thursday, August 12. The same day, Dr. Rust and Ms. Rust texted plaintiff "[w]e're sorry for the way things have gone but for your recovery we have decided to let you go." Plaintiff's employment formally ended on August 11.

Plaintiff underwent further treatment in the fall of 2021 and brought this wrongful termination action against defendants. The case proceeded to summary judgment, where the trial court dismissed four of plaintiff's claims that are the subject of this appeal:[2] Claim 2 under ORS 653.641, as against all defendants, alleging retaliation for request-ing sick time; Claim 3 under ORS 659A.030(1)(g), as against Dr. Rust and Ms. Rust, for aiding and abetting unlawful employment practices; Claim 4 under ORS 659A.109, as against Rust Dental for discrimination because of request-ing accommodation; and Claim 5 under ORS 659A.112, as

---

[2] Claims 1 and 6 were not appealed and ultimately dismissed after appeal by stipulation of the parties and are not at issue.

against Rust Dental, for discriminating against plaintiff because of her disability.

## II.  ANALYSIS

### A.  *Retaliation*

In her first assignment of error, plaintiff asserts the trial court erred in dismissing Claim 2 under ORS 653.641, as against all defendants, alleging retaliation for requesting sick time. Plaintiff argues that the court wrongly applied the standard for punitive damages, rather than the general standard for liability. Defendant argues that we should apply the correct test on appeal and affirm under the "right for the wrong reasons" doctrine. We agree with plaintiff that the court used the wrong standard, and we decline to apply the correct test for the first time on appeal.

ORS 653.641(2) provides that it is unlawful for an employer to, as relevant here:

"Retaliate or in any way discriminate against an employee with respect to any term or condition of employment because the employee has ***, submitted a request for sick time, [or] taken sick time ***."

In turn, sick time is time

"during which an employee is permitted to be absent from work for a reason authorized under ORS 653.616 without a reduction in benefits, including but not limited to health care benefits, that the employee earns from the employer."

ORS 653.601(7).

To prevail on a retaliation claim, an employee must show that "1) they have a protected trait or engaged in a protected activity, 2) they suffered an adverse employment outcome, and 3) the protected trait or activity was a 'substantial factor' in the adverse decision." *Crosbie v. Asante*, 322 Or App 250, 519 P3d 551, *rev den*, 370 Or 827 (2022). An employer may put on evidence that there was a non-retaliatory reason for the employment action, but unlike under related federal law, Oregon retaliation law has no burden shifting framework that requires the employee to show why that explanation is unpersuasive. *Compare McDonnell Douglas Corp. v. Green*, 411 US 792, 93 S Ct 1817, 36 L Ed

2d 668 (1973) (the burden shifting framework first requires that the employee make a prima facie showing of discrimination; if successful, then the burden shifts to employer to show there was a non-retaliatory reason for the employment action; if the employer is able to make that showing, then the burden shifts back to employee to show that the non-retaliatory explanation was pretextual) *with Williams v. Freightliner, LLC*, 196 Or App 83, 89, 100 P3d 1117 (2004) (same).

The trial court reasoned that plaintiff had not proved causation, noting, in part, that:

> "No factual evidence has been alleged or presented which is clearly or obviously showing 'malice', 'reckless', or 'outrageous indifference' to [plaintiff']'s medical hardship by Rust Dental or of any retaliatory action regarding the employment of [plaintiff]. *** The evidence provided here seems to possibly suggest, as seen in *Sampler*, a healthcare employer who was particularly sensitive and mindful of the healthcare needs and hardships of their own employees, even a newly hired probationary employee, rather than as an employer with 'outrageous indifference' for the welfare of others, as alleged in the plaintiff's complaint."

The requirement for malice, recklessness, or outrageous indifference is found nowhere in the retaliation statute, but those words are found in ORS 31.730(1), which provides the standard for the recovery of punitive damages.[3] To the extent that the trial court believed plaintiff needed to demonstrate "malice, recklessness or outrageous indifference," the trial court erred. Additionally, the trial court's statement that evidence "seems to possibly suggest," indicates two other errors: first, the court must view all evidence in the light most favorable to the non-moving party; and second, any genuine disputes of material fact are to be resolved by the factfinder at trial. *Bivins*, 313 Or App at 277. That the trial court found evidence *could* be read to exonerate the defendant, and that such a possibility indicated that

---

[3] The standard is either "has acted with malice" or "has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others," both of which must be proven by clear and convincing evidence. ORS 31.730(1). Note that recklessness and outrageousness are part of the same standard, not separate standards.

summary judgment was appropriate in favor of the moving party was an improper application of those principles.

Defendants go on to urge us to apply the correct standard and affirm under the "right for the wrong reasons" doctrine. We decline to do so because we remand on other bases and resolution of the issue may require additional factfinding.

We do however address a related legal issue that the parties dispute, as it will arise on remand. Defendants argue that plaintiff was out of sick time, could not have used any more sick time, and therefore cannot be protected under the sick time retaliation statute. As an issue of first impression, we turn to the statute. ORS 653.641(2) states that it is unlawful for any employer to "Retaliate or in any way discriminate against an employee with respect to any term or condition of employment because the employee has * * * submitted a request for sick time, [or] taken sick time." Nothing in the plain text of the statute requires that a person have sick time to be protected; the mere request is sufficient.

Defendant argues that we should instead consider an unpublished 10th Circuit decision regarding the Family Medical Leave Act (FMLA), which held that the FMLA *likely* did not cover employees who were not eligible for family leave. *See Wilkins v. Packerware Corp.*, 260 Fed Appx 98 (10th Cir 2008). Plaintiff argues, and we agree, that *Yeager v. Providence Health System Oregon*, 195 Or App 134, 140, 96 P3d 862, *rev den*, 337 Or 658 (2004), provides better guidance for our interpretation.

In *Yeager*, we interpreted ORS 659A.183(2) (regarding the Oregon Family Leave Act, or OFLA), which makes retaliation under OFLA unlawful when an employee has "submitted a request for family leave or invoked any provision of ORS 659A.150 to 659A.186." *Yeager*, 195 Or App at 140. We concluded that protection from retaliation under OFLA was "not limited to an employee who is eligible and has taken OFLA-protected leave." *Id.* Here, the plain wording of ORS 653.641 states that the *request* for sick time alone entitles a worker to protection. Using the Supreme Court's analysis under *State v. Gaines*, 346 Or 160, 164, 206 P3d

1042 (2009) (the text and context of a statute are the first level of statutory analysis) we conclude that an employee who requests sick time, regardless of whether they have accrued eligible sick time to use, is protected.

B.    *Requesting Accommodation and the Interactive Process*

In her third assignment of error, plaintiff asserts that the trial court erred in granting summary judgment on Claim 4, under ORS 659A.109, as against Rust Dental for discrimination because of requesting an accommodation. Plaintiff argues the trial court erred by concluding that she did not request an accommodation, and by applying the wrong standard.

We agree that the trial court made the same errors as in Claim 2, namely that it used the punitive damages standard that was inapplicable to the claim, and that the court weighed the evidence in defendant's favor, contrary to the summary judgment standard. In its opinion and order granting summary judgment, the trial court wrote, regarding the accommodation claim, that "[plaintiff] did not engage in an interactive process regarding accommodation because she never made a request for accommodation." The trial court reasoned that plaintiff's request for extra sick time was not a request for accommodation because she did not "identify a reasonable accommodation but rather suggested unlimited and unrestricted leave with no concrete plans to return or any requests for additional accommodation." The trial court also, again, noted that there was no proof of malice, recklessness or outrageous indifference on the part of defendants.

ORS 659A.109 provides that

"It is an unlawful employment practice for an employer to discriminate against an individual with respect to hire or tenure or any term or condition of employment because the individual has applied for benefits or invoked or used the procedures provided for in ORS 659A.103 to 659A.145 or has given testimony under the provisions of ORS 659A.103 to 659A.145."

Requesting accommodation is protected under ORS 659A.109. *Herbert v. Altimeter, Inc.*, 230 Or App 715, 218 P3d

542 (2009). OAR 839-006-0206(4)[4] establishes that requesting accommodation is part of an "interactive process," which places burdens on both the employee and the employer. The act of requesting accommodation is often done with plain language in ordinary conversations. OAR 839-006-0206(5) ("A meaningful interactive process is an informal process between a qualified employee or applicant with a disability and an employer in an effort to identify potential reasonable accommodation."); *see also Humphrey v. Mem'l Hosps. Ass'n*, 239 F3d 1128, 1137 (9th Cir 2001) (a letter that stated employee "may have to take some time off until we can get the symptoms better under control" was sufficient to satisfy the "minimal requirements" for engaging in the interactive process).[5] "[T]he duty to accommodate is a continuing duty that is not exhausted by one effort." *Humphrey*, 239 F3d at 1138 (internal quotations omitted).

Here, regarding the evidence that was submitted in support of and in opposition to summary judgment, the trial court once again noted that the evidence *might* suggest that defendants were not given "information necessary and essential to collaborate with" plaintiff on an accommodation. As a result of that observation about the inferences from the available facts, the trial court concluded that plaintiff's discussions did not qualify as engaging in an interactive process with her employer. We disagree, and again note that, to the extent the evidence was equivocal, the court was required to view the evidence in the light most favorable to plaintiff and

---

[4] OAR 839-006-0206(4) states:

"Once a qualified employee or applicant with a disability has requested reasonable accommodation or otherwise disclosed to the employer a disability that may require reasonable accommodation, the employer has a duty to initiate a meaningful interactive process with the employee or applicant to determine whether reasonable accommodation would allow the employee or applicant to perform the essential functions of a position held or sought."

[5] We may rely on federal caselaw in our analysis because Oregon discrimination law is modeled after the Federal Americans with Disabilities Act (ADA), and the legislature has directed us to construe Oregon law in "lockstep" with federal law. ORS 659A.139; *Fenimore v. Blachly-Lane County C.E.A.*, 297 Or App 47, 56, 441 P3d 699 (2019). "However, ORS 659A.139 does not require absolute symmetry between our statutory protections for individuals with disabilities and those afforded by the ADA." *Fenimore*, 297 Or App at 56. "To the extent that a particular provision of our statutory scheme cannot be construed consistently with similar provisions in the ADA, we do not look to the ADA and case law interpreting it to determine the meaning or scope of our laws." *Id.*

deny summary judgment if there were any genuine disputes about material facts. *See Beneficial Oregon, Inc.*, 313 Or App at 277 (discussing summary judgment standard).

The declarations submitted demonstrated that the Rusts knew of plaintiff's diagnosis and prognosis and communicated with her about her needs well before the day of plaintiff's termination. Ms. Rust admitted that plaintiff requested two weeks off at the time of her first surgery. Declarations indicated that plaintiff would lay out her medical needs to Dr. Rust or Ms. Rust, and then they would accordingly grant her absence. In those circumstances, we conclude that the evidence was sufficient for a factfinder to find that plaintiff engaged in an interactive process. *See Garcia v. Salvation Army*, 918 F3d 997, 1010 (9th Cir 2019) (employer engaged in interactive process when it repeatedly extended employee's leave of absence due to fibromyalgia). That is not to say that the evidence could not support defendants' argument that plaintiff failed to sufficiently communicate with them, as the trial court concluded, or that there were long periods without communication with plaintiff at all. But looking at the evidence in the light most favorable to plaintiff, there is a genuine issue of material fact.

Defendants point out that during the August 7 call, when asked what she wanted to do in regard to her upcoming surgery, plaintiff responded "I don't know;" defendants argue that that was proof that she failed to request an accommodation or engage in the interactive process. We reject any argument that plaintiff's request was not in the appropriate form. Considering the evidence of the call with defendants on August 7, a reasonable juror could conclude that defendants *prevented* plaintiff from requesting further time off, as she had notified them of the emergency surgery that was scheduled for later that week, and defendants, according to plaintiff, pressured her to quit. On the 9th, the same day as her next appointment, she received a text message terminating her employment. A reasonable juror could infer that plaintiff did not know how much time she needed to request until she was out of surgery and knew whether it was successful or had further complications, and that defendants'

actions were coordinated to avoid allowing plaintiff to be able to make any request—thus allowing them to be able to claim this very defense.

Further, the evidence demonstrated that defendants had treated plaintiff differently than other employees who had requested leave, and that they had shifted the burden to her to request the specific time off that she needed (as demonstrated in the "I don't know" conversation). As other courts have noted in similar circumstances considering the "interactive process," once the interactive process begins, the burden is on the employer to provide the employee with reasonable options. *See Humphrey*, 239 F3d at 1137 (discussing the interactive process as it relates to the Americans with Disabilities Act (ADA)). A rational juror could find, providing all reasonable inferences to plaintiff, that plaintiff needed an accommodation—such as a leave of absence—but defendants required plaintiff to explain specifically what she wanted, rather than offer a period of leave, like they had done with another employee with a less serious diagnosis.

In sum, plaintiff raised a genuine issue of material fact as to whether she requested an accommodation. The trial court erred by dismissing Claim 4.

C. *Discrimination*

In her fourth assignment of error, plaintiff asserts the trial court erred in granting summary judgment on Claim 5, under ORS 659A.112, as against Rust Dental, for discriminating against plaintiff because of her disability. The trial court, relying on *Samper v. Providence St. Vincent Med. Ctr.*, 675 F3d 1233 (9th Cir 2012), concluded that plaintiff's job required regular in-person attendance, that her disability-related absences were not excusable, and that in turn she was not qualified for the position; therefore, defendants did not discriminate against her because of her disability. We conclude that the trial court misapplied the relevant law and overstated the importance of *Samper*.

Under Oregon law, employers may not fail to accommodate a "qualified individual with a disability." ORS 659A.112(2)(e). Qualified means that a person "with or without

reasonable accommodation, can perform the essential functions of the position." ORS 659A.115. Defendants argue that plaintiff was not actually qualified for the position because she was not performing the job adequately, did not want the job, and that her absences were not a reasonable accommodation. Plaintiff argues she was qualified, and that a leave of absence would have been a reasonable accommodation.

1.  *Competency*

Defendants alleged that plaintiff was making novice mistakes, failing to handle a range of office tasks, and that she was oversharing about her diagnosis and treatment— which was off-putting to patients and staff. But plaintiff alleged that she was performing the job admirably, that any mistakes were due to being new to the job and her cancer diagnosis and argues that defendants' arguments are pretexts for discrimination. Under the circumstances, whether plaintiff's mistakes were serious enough to render her unqualified are a jury question. *See Kelley v. Washington County*, 303 Or App 20, 36, 463 P3d 36 (2020) (whether corrections officer was qualified for prison job was question for jury).

Further, an employee is not unqualified for the position merely because their disability has affected their performance. *Humphrey*, 239 F3d at 1137 (medical transcriptionist who missed work due to OCD symptoms was not unqualified merely because her OCD was interfering with her attendance). "[W]here a leave of absence would reasonably accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA." *Id.* at 1135- 36. In that same vein, plaintiff here has alleged that any performance issues were a result of her physically and mentally taxing cancer treatment. We agree that the facts in the record, viewed in the light most favorable to plaintiff, could support such an inference. There is at least a triable issue of fact as to whether plaintiff was qualified for the position.

2.  *Attendance and* Samper

Defendants argue at length that, under *Samper*, plaintiff was required to come into work. To that end, defendants argue that the job could not have been done from home,

and, thus, the accommodation plaintiff sought was unreasonable. The trial court adopted a similar analysis. But whether the job could have been done from home is irrelevant because that was not the accommodation that plaintiff sought. We read the issue as being whether plaintiff's request for more medical leave was a reasonable accommodation. We conclude that it was, and that *Samper* is an inapt comparison.

We make a "fact-specific, individualized analysis" of a proposed accommodation. *Samper*, 675 F3d at 1239. The situation in *Samper* is distinct from the circumstances here. In *Samper,* the plaintiff was a nurse in a neo-natal intensive care unit (NICU). *Id.* at 1235. She had been diagnosed with fibromyalgia, an incurable pain condition which may flare unexpectedly. *Id.* The nurse sought absences whenever her condition flared and had done so over the course of several years,[6] routinely exceeding her employer's absence policy. *Id.* The Ninth Circuit held that a NICU nurse's job was so essential that her employer was not required to put up with chronic absenteeism, even as the result of a disability. *Id.* at 1241 ("In the case of a neo-natal intensive care nurse, we conclude that attendance really *is* essential.").

Unlike *Samper*, the plaintiff here does not care for premature infants at high risk of death; she files paperwork and does routine office tasks. Her condition, while serious, was emergent and the evidence provided to the court did not allow for an inference of a chronic or degenerative condition. It could have been a reasonable accommodation to allow plaintiff unpaid medical leave to recover from her emergency surgery. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F3d 1243, 1247 (9th Cir 1999) (unpaid medical leave can be a reasonable accommodation). On the facts presented in this record, a juror could rationally find that plaintiff's request for accommodation could have reasonably been provided by defendant. Plaintiff has raised a genuine issue of material fact as to whether a period of medical leave would have been a reasonable accommodation as a result of her emergency surgery and ongoing cancer treatment.

---

[6] The nurse had worked for the hospital for some 11 years. She had only been diagnosed with fibromyalgia several years prior to being fired, but the evidence indicated that her attendance had been spotty since early in her employment. *Samper*, 675 F3d at 1235.

Defendants contend that they should not have been required to keep plaintiff on staff indefinitely while they tried to have other staff members and alternatively a family member take over plaintiff's duties during her absences. We agree that, at trial, they are free to argue to the factfinder that such an accommodation was an undue hardship. *See* ORS 659A.112(2)(e) (it is unlawful to not make reasonable accommodations "unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer."). But we reject the notion that giving plaintiff medical leave under the circumstances was an undue hardship as a matter of law based on the evidence presented in support of the motion for summary judgment. What a reasonable amount of leave was under the circumstances is ultimately a question of fact for the factfinder.

D.  *Individual Liability of Dr. Rust and Ms. Rust*

Looping back to plaintiff's second assignment of error, plaintiff asserts that the trial court erred in dismissing Claim 3 under ORS 659A.030(1)(g), as against Dr. Rust and Ms. Rust, for aiding and abetting unlawful employment practices. The trial court concluded that Dr. Rust and Ms. Rust could not be held individually liable because they had been acting within the scope and authority of their positions at Rust Dental. Plaintiff argues that decision makers in a company may be held individually liable. Defendants concede that if Rust Dental is found liable, that Dr. Rust and Ms. Rust could potentially be held liable, but argues that they cannot be held liable if Rust Dental is not liable.

We accept defendants' concession that Dr. Rust and Ms. Rust, as decision makers for Rust Dental, can be held individually liable if Rust Dental is found liable. "[P]ersons directing the business-entity employer's unlawful conduct can be held individually liable under ORS 659A.030(1)(g)." *See Allison v. Dolich*, 321 Or App 721, 726, 518 P3d 591 (2022) (owner and manager of LLCs were not insulated from liability for unlawful wage practices they implemented). In turn, the trial court erred by dismissing Claim 3.

We do not reach the parties' arguments about whether Dr. Rust and Ms. Rust can be held liable independently of Rust Dental, because defendants' arguments are predicated on the dismissal of the claims against Rust Dental, and we have already determined that those dismissals were erroneous.

## III.   CONCLUSION

As to Claim 2, the trial court erred by applying the wrong legal standard, and we reverse and remand to reconsider in light of the correct standard. As to Claims 4 and 5, the trial court erred in the application of the relevant accommodation law and thus there remains a genuine dispute of material fact as to whether Rust Dental discriminated against plaintiff. In turn, we accept defendants' concession on Claim 3 that Dr. Rust and Ms. Rust may (but not must) be held individually liable if Rust Dental is found liable. Accordingly, we reverse and remand all claims before us.

Reversed and remanded.