228 October 15, 2025 No. 900

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Nathan CULLEN,
an individual,
*Plaintiff-Appellant,*

*v.*

CLEAN WATER SERVICES,
a public water resource management utility,
and Diane Taniguchi-Dennis,
an individual,
*Defendants-Respondents.*

Washington County Circuit Court
23CV03815; A182859

Andrew Erwin, Judge.

Argued and submitted September 9, 2025.

Matthew Malmsheimer argued the cause for appellant. Also on the briefs were Christopher Lundberg and Haglund Kelley, LLP.

Ruth A. Casby argued the cause for respondents. Also on the brief was Hart Wagner, LLP.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Plaintiff appeals from the grant of summary judgment on multiple employment claims stemming from his separation from his former employer, Clean Water Services (CWS). According to plaintiff, the record contained a factual dispute that precluded summary judgment—whether he voluntarily resigned or was terminated. Plaintiff also contends that the trial court erred in denying his motion, pursuant to ORCP 47 F, for a continuance to conduct further discovery on that disputed fact. We agree that the trial court abused its discretion in denying plaintiff the opportunity to conduct discovery and therefore reverse.

"We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted). In so doing, "we view the facts in the light most favorable to the nonmoving part[y]," and we "examine whether no objectively reasonable juror could find in their favor on the question at issue." *Id.* In making that determination, "we examine 'the pleadings, depositions, affidavits, declarations, and admissions on file.'" *Id.* (quoting ORCP 47 C). We state the facts consistent with that standard.

Because the key issue is whether plaintiff worked for CWS when the alleged discriminatory acts occurred, we describe the facts related to his departure in some detail.

Plaintiff had worked for CWS since 1992, rising through the ranks from engineer to Chief Operating Officer (COO). In the summer of 2022, after an undisputedly successful career at CWS, things deteriorated quickly. In July, plaintiff attended a meeting with other members of the executive team and, uncharacteristically, lost his temper when discussing an employee's insubordination. Plaintiff later attributed that outburst to a subsequent diagnosis of Major Depressive Disorder.

About a month later, on August 22, 2022, plaintiff attended a virtual meeting with the Chief Executive Officer

(CEO) of CWS.[1] Plaintiff began the meeting by reading a prepared statement in a monotone voice:

> "I'm done. I always thought I was an eternal optimist, but I've lost hope and cannot endure any longer.

> "Starting tomorrow, I will be gone using [t]ime [o]ff[,] [without] [p]ay and thereafter I will use accruals until I can get my affairs in order. This is not how I've wanted to go out, but I am exhausted and lost all hope. There are a few people I will talk to personally * * * but I leave the rest to you. Thank you for your time.

> "* * * [T]here is nothing more to talk about, I've said everything I have to say all too many times about what needs to be done to improve the company, but with too little effect, so my hope is gone. For both our sakes, let us part professionally, with my integrity intact."

That type of resignation was inconsistent with plaintiff's commitment to CWS, and the CEO appeared to be "dumbfounded" by this announcement. She responded by asking, "Can't we talk about this?" and "Do you want to think this over? What about in two weeks?" Plaintiff responded that he couldn't commit to anything, but maybe after he had time to think about it, he would be able to make a decision. Based on that exchange, plaintiff left the meeting believing that the CEO was giving him time to make a decision about his future with CWS.

Less than an hour later, a colleague texted him, "I just spoke to [the CEO]. Wow!? Don't know what to say[,] except that I'm thinking of you." Plaintiff responded by forwarding his prepared message that he delivered to the CEO and saying, "Thank you for caring, it means a lot to me. I've given my heart and soul to CWS for 30 years and never imagined I would go out this way. I am beyond sad, heart broken, and lost."

The following day, August 23, the CEO shared the conversation she had with plaintiff with the CWS Board of Directors and plaintiff's colleague began sharing the information with plaintiff's direct reports. Later that evening, plaintiff attempted to locate the number for the Employee

---

[1] CWS's CEO is also a named defendant in plaintiff's complaint.

Assistance Program (EAP) for counseling. When he discovered that he had been locked out of his computer, he texted the director of Human Resources to obtain the number. When she responded with the number, she said, "I hope you're okay." Plaintiff responded that he was "not doing ok" and informed her that when he called EAP, he "vacillated between choosing 3 for emergency or 2 for a call back to schedule an appointment."

That same evening, plaintiff also emailed the CEO to express his surprise and dismay at being locked out of the CWS system. The CEO responded later that same evening—after plaintiff had expressed a need for mental health services to HR—and stated that plaintiff "had asked her to respect his decision to resign." Plaintiff was "perplexed" by that response because she appeared to be "backtracking" on her offer to give him time to think about his intentions. He responded to that email with "a few corrections," clarifying "I did not say I resigned" and that the CEO had asked him to call her in two weeks to discuss his plans.

The following day, August 24, plaintiff's wife (who is also a CWS employee) participated in a meeting at the CEO's request. The meeting lasted three hours and was "very emotional." During that meeting, the CEO asked plaintiff's wife, "Is [plaintiff] going to resign?" and "Does [plaintiff] want to come back?" Plaintiff's wife told the CEO that "of course" plaintiff would want to come back, but she also expressed that he was burnt out and needed some compassion and time off. Plaintiff's wife left that meeting believing that the CEO would give plaintiff some time off "to get back to his previous self."

The next day, August 25, the CEO met with plaintiff, at her request. That meeting also lasted almost three hours. The CEO held plaintiff's hand throughout the meeting, telling him that she would not pressure him to return. Plaintiff felt that she understood his fragile emotional state.[2] In fact, he felt so supported that he, still under the impression that the decision to remain at the company was

---

[2] Defendants characterize this meeting as one in which the parties met "to discuss the reasons for [plaintiff's] resignation and resolve the details of his departure."

his, emailed the CEO later that day, stating that he would be returning to work after taking a 30- to 60-day leave to address his mental health issues.

The CEO responded that, based on their August 22 virtual meeting, she had already informed the board that he resigned and there was "no path back" for him at CWS. Plaintiff was "shocked" to receive that email, which he perceived to be disavowing a series of conversations in which the CEO encouraged him to think things over.

Shortly thereafter, plaintiff was diagnosed with Major Depressive Disorder and Anxiety. He attributed his uncharacteristic outbursts in July and August, including his monotone statement that he was "done," to symptoms of that disorder. He sought protected FMLA leave to obtain treatment for his condition, which CWS granted, but only until his official separation date.

Plaintiff filed suit, alleging multiple employment claims stemming from the manner in which CWS handled matters during that several-week period in the summer of 2022. Plaintiff alleged that CWS was aware that he was experiencing a mental health disability, could have accommodated that disability but chose not to, and failed to reinstate him after he took medical leave. Plaintiff further alleged that his termination, or alternatively, CWS's refusal to reinstate him, was discrimination and retaliation due to his disability.

Defendants moved for summary judgment, arguing that plaintiff resigned on August 22 and defendants were not on notice of any disability before that date, so they could not have retaliated or discriminated against him on the basis of a disability. And, because he had already resigned, plaintiff was not entitled to any leave or accommodations that postdated his resignation. Plaintiff responded with declarations from himself and his wife, contending that plaintiff did not resign.

In response to defendants' motion for summary judgment, and because he had not yet taken any discovery, plaintiff requested a continuance under ORCP 47 F, which allows a party to continue summary judgment proceedings to take necessary discovery. Plaintiff sought relevant

communications between management and other employees at CWS and the depositions of relevant CWS decisionmakers and employees. He explained that that discovery would "shed light on whether [plaintiff's] communication—which reasonably can be interpreted in a number of ways—was understood by Defendants as a resignation, a call for help, a request for an accommodation, or something else." Such discovery, according to plaintiff, would "also shed light on whether Defendants understood [plaintiff's] need for an accommodation and their motives in refusing to rehire [plaintiff] back into the COO position." He also pointed out that the trial date was over seven months away and that he attached a request for production to the ORCP 47 F continuance request. Finally, he argued that defendants would not be prejudiced by a continuance.

Defendants objected, arguing that plaintiff, in his complaint, had already certified that his claims were "supported by evidence" pursuant to ORCP 17 C(4).[3] According to defendants, that certification meant that all of plaintiff's allegations were supported by evidence, without a need to undertake any additional discovery. Defendants also contended that plaintiff failed to provide sufficient specificity as to "what documents or testimony exist that would create a jury question considering his own admissions." That was so, according to defendants, because the material facts were undisputed; that is, plaintiff told the CEO that he was resigning, plaintiff never alerted defendants that he needed accommodation before that point, and plaintiff later changed his mind about his decision to resign. Defendants also pointed out that the case had been pending for over seven months and plaintiff had yet to take any discovery.

The court denied plaintiff's request for a continuance. The court reasoned that the question of whether plaintiff resigned was a narrow one, and thus the only issue was

---

[3] ORCP 17 C(4) provides:

"A party or attorney certifies that the allegations and other factual assertions in the pleading, motion or other document are supported by evidence. Any allegation or other factual assertion that the party or attorney does not wish to certify to be supported by evidence must be specifically identified. The attorney or party certifies that the attorney or party reasonably believes that an allegation or other factual assertion so identified will be supported by evidence after further investigation and discovery."

whether plaintiff could defeat defendants' evidence that plaintiff voluntarily resigned.

After a hearing a few weeks later, the court granted summary judgment to defendants as to all of plaintiff's claims. The court reasoned that the parties agreed on all material facts, and only disagreed as to the legal significance of those facts. Specifically, the court observed that plaintiff's prepared statement that he was "done," combined with the text exchange with a former colleague the evening after he made the statement, where plaintiff stated that he "never meant to go out this way," meant that it was undisputed that plaintiff resigned:

"Despite all parties' clear understanding that plaintiff was resigning his employment on August 22, 202[2], and the unambiguous words he concedes he communicated, plaintiff now argues there is an ambiguity about what he meant. Because no reasonable factfinder could find such ambiguity regarding what plaintiff said to [the CEO] (as it was written), and what he told [his colleague] he meant by those words, there is no dispute of material fact."

On appeal, the parties reiterate the arguments made to the trial court. Because it is dispositive, we focus on plaintiff's second assignment of error: whether the trial court abused its discretion in denying plaintiff's request for additional discovery under ORCP 47 F. We review a trial court's denial of an ORCP 47 F motion for an abuse of discretion. *Smith v. University of Oregon*, 341 Or App 583, 589, 574 P3d 513 (2025).

ORCP 47 F allows a party to respond to a summary judgment motion by requesting additional time to obtain discovery. The purpose of the provision in the federal rule upon which ORCP 47 F is modeled is "to provide an additional safeguard against an improvident or premature grant of summary judgment * * * and [the rule] should be applied with a spirit of liberality." *U.S. ex.rel. Bernard v. Casino Magic Corp.*, 293 F3d 419, 426 (8th Cir 2002) (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2740 (3d ed 1998)); *see also* Exhibit E, Senate Committee on Judiciary, HB 2230, Mar 26, 1975 (statement of attorney Laird Kirkpatrick

indicating that the state summary judgment rule is based on the federal summary judgment rule).

ORCP 47 F provides:

"Should it appear from the affidavits or declarations of a party opposing the motion that the party cannot, for reasons stated, present by affidavit or declaration facts essential to justify the opposition of that party, the court may deny the motion or may order a continuance to permit affidavits or declarations to be obtained or depositions to be taken or discovery to be had, or may make any other order as is just."

Typically, a party moving for a continuance under ORCP 47 F should specify to the trial court how additional discovery is necessary to oppose a motion for summary judgment. *See, e.g.*, *Smith*, 341 Or App at 590 ("[P]laintiff does not explain how discovery would have added anything to the court's understanding * * *."); *Caro v. Hansen*, 128 Or App 267, 273, 875 P2d 512 (1994) (same). Under those circumstances, a trial court's role is to answer a straightforward question: Could the discovery specified by the party requesting an ORCP 47 F continuance lead to evidence that would defeat summary judgment? If the answer is yes, a continuance should generally be granted.

Determining whether plaintiff's requested discovery was necessary for him to respond to defendants' summary judgment motion requires a review of the claims raised by plaintiff and the issues that were before the court on summary judgment.

Plaintiff raised multiple employment claims in his complaint, all of which stem from CWS's treatment of his disability of depression. To prove those claims, plaintiff was required to demonstrate that an adverse employment action was undertaken because of a protected characteristic (in this case, his disability), ORS 659A.112, or because he engaged in a protected activity (in this case, seeking accommodation for his disability), ORS 659A.109. Plaintiff also alleged that defendants failed to reinstate him after his protected medical leave, in violation of ORS 659A.171, denied him the ability to take OFLA leave, in violation of ORS 659A.183(1), and failed to provide reasonable accommodation for his disability, ORS 659A.118.

Defendants' motion for summary judgment attacked each of those claims based on a single premise: Plaintiff had resigned prior to both his request for accommodation and defendants' awareness of his disability. To resolve that motion, then, the trial court was tasked with determining if a dispute of fact exists as to whether plaintiff resigned before defendants knew or should have known about his disability. In assessing plaintiff's ORCP 47 F motion, the trial court had to answer a related question: Was the identified discovery necessary for plaintiff to establish a factual dispute?

Defendants' evidence in support of summary judgment focused on plaintiff's actions: He made statements during a meeting that he was "done," and he took actions consistent with someone who was resigning, including texting a colleague to say goodbye, not showing up to work the next day, and collecting his belongings. Plaintiff, however, claimed that he did not resign. He acknowledged that he took actions consistent with a resignation. However, according to plaintiff, the CEO was caught completely off guard by his proclamation, asked if they could discuss it, and offered plaintiff several weeks to think about whether he really wanted to resign. His wife, another CWS employee, testified that the CEO had a long meeting with her—two days after the meeting where plaintiff "resigned"—in which she was trying to ascertain plaintiff's plans and specifically whether he was going to resign.

The evidence plaintiff sought went directly to that central dispute. Specifically, he sought internal communications and witness testimony from CWS decisionmakers. Those communications include emails between decisionmakers that may have indicated whether they were treating plaintiff's statement as a resignation, or, as plaintiff believed, were giving him time to decide whether to resign. The communications and deposition testimony could also elucidate when defendants knew that plaintiff requested a disability accommodation and whether any action was taken as a result of that request. Perhaps plaintiff is correct that defendants were initially giving him time to decide whether to resign, but then learned of his accommodation request and decided at that point to terminate his employment. The

fact that plaintiff had no access to any internal communications or the ability to interview CWS employees meant that the entirety of the record on the key question came from plaintiff's perception, not any evidence from defendants.

The essential nature of information from defendants is highlighted by the fact that the purpose for which plaintiff sought discovery was the precise basis of the trial court's decision. The trial court concluded that all parties had a "clear understanding" that plaintiff resigned, despite the fact that plaintiff had taken no discovery on defendants' understanding.

Although the trial court did not appear to base its decision to deny the ORCP 47 F motion on any other factors, other factors may be relevant to a trial court's exercise of discretion. In addition to the necessity of the discovery, courts typically consider how much time remains before trial, how long the case had been pending, any prior continuances by the nonmoving party, and any prejudice to defendants by the delay. *See, e.g.*, *Hamilton v. Orange Cnty. Sheriff's Dep't*, 8 Cal App 5th 759, 765, 214 Cal Rptr 3d 151, 155 (2017) (identifying similar factors in applying state summary judgment law similarly modeled after the federal rule).

In addition to the necessity of the discovery, the other considerations tend to favor plaintiff as well. This was his first request for a continuance, the trial date was over seven months away, and defendants never identified any prejudice. *Cf. Eberhardt v. Providence Health and Services*, 298 Or App 454, 461, 444 P3d 511 (2019) (denial of motion under OCRP 47 F affirmed when trial court had already granted plaintiff additional time to file her response and made it clear to plaintiff that it would not allow any additional postponements). In light of those considerations, the trial court should have granted plaintiff's ORCP 47 F motion for a continuance.[4]

Reversed and remanded.

---

[4] Defendants also argue, as they did below, that plaintiff's complaint certified that his claims were "supported by evidence" pursuant to ORCP 17 C(4) and he therefore did not need discovery. However, the fact that plaintiff's claims were supported by some evidence does not mean that plaintiff already had in his possession, at the time of filing his lawsuit, all evidence required to respond to defendants' motion for summary judgment.