No. 470 May 28, 2026 159

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Michael PAXTON,
*Plaintiff-Appellant,*
*v.*
Robert SIMICH,
*Defendant-Respondent.*

Marion County Circuit Court
22CV35647; A184124

Daniel J. Wren, Judge.

Argued and submitted  June 6, 2025.

Michael Paxton argued the cause and filed the brief *pro se*.

No appearance for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

POWERS, J.

Affirmed.

**POWERS, J**

Plaintiff appeals from a grant of summary judgment in favor of defendant, concluding that plaintiff filed his breach of contract and unjust enrichment claims outside the six-year statute of limitations period. On appeal, plaintiff raises five assignments of error that challenge the grant of summary judgment in defendant's favor. Plaintiff's main contention is that the trial court erred by misapplying the statute of limitations. We write to address only the statute of limitations argument, and ultimately, we conclude that the trial court did not err in its determination. Accordingly, we affirm.

As an initial matter, plaintiff's first four assignments of error advance several evidentiary arguments, including that the trial court erred by (1) failing to process and consider plaintiff's response and supporting exhibits; (2) failing to grant or enforce plaintiff's discovery requests and by denying his extension of time; (3) admitting and relying on unauthenticated and selectively interpreted transcripts; and (4) admitting and relying on the Portland Trail Blazers Season Ticket Holder Terms and Conditions and conflating unrelated agreements. We have considered each assignment and conclude that plaintiff has not demonstrated reversible error.

Turning to plaintiff's main contention, we review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party—here, defendant—is entitled to judgment as a matter of law. *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021). In so doing, "we view the facts in the light most favorable to the nonmoving parties," and we "examine whether no objectively reasonable juror could find in their favor on the question at issue." *Id.* In making that determination, we examine the pleadings, depositions, affidavits, declarations, and admissions on file." *Id.* (internal quotation marks omitted); *see* ORCP 47 C. Consistent with that standard of review, we set out in this nonprecedential memorandum opinion only those facts necessary for our discussion of the assignment of error.

Plaintiff and defendant are both Portland Trail Blazers season ticket holders, and those tickets are subject to terms and conditions set by the Trail Blazers. Defendant agreed to transfer ownership of defendant's tickets to plaintiff in exchange for payment. They memorialized their agreement by signing a contract, which—according to plaintiff—both parties knew violated the terms and conditions of the season tickets set forth by the Trail Blazers.

In August 2016, as part of the contract and at defendant's request, plaintiff listed additional upper-level seats for sale on StubHub. The Trail Blazers contacted plaintiff and asked if he was selling those tickets, which plaintiff denied. The Trail Blazers also contacted defendant and told him that the listing violated the terms and conditions of the tickets. In response, defendant and the Trail Blazers came to an agreement: the Trail Blazers would not revoke defendant's season ticket account in exchange for returning the tickets and denying plaintiff access to future tickets. Although defendant did not tell plaintiff about the deal he made with the Trail Blazers, which was a breach of the contract between plaintiff and defendant, he did ask plaintiff to take the tickets down from StubHub. At that point, plaintiff knew that he no longer had access to those tickets and that only defendant got credit towards defendant's Trail Blazer account.

A month later in September, plaintiff recorded a phone call with defendant, and a transcript of that call was submitted to the trial court as part of the summary judgment record. In that conversation, the parties discussed their agreement, and plaintiff observed that, because of the confrontation with the Trail Blazers over selling and acquiring tickets, they might have to get rid of the upper-level tickets and that he was going to lay low for a little while.

In late October, the parties exchanged e-mails, which were also included in the summary judgment record. On October 20, plaintiff sent defendant an email telling defendant, "[y]ou now have me in a corner that I have begged not to be in" and explaining that it was plaintiff's understanding that defendant was "going to get [plaintiff] the game A/B package, so [plaintiff] can post and sell the tickets through the Blazers website" but that plaintiff still

did not have the account access and password "as [defendant] promised[.]" The next day on October 21, defendant responded by email explaining that he had consulted with legal counsel "per [their] agreement" and had been advised to offer plaintiff two courses of action: (1) refund $10,000 for the transfer fee and void the agreement; or (2) "continue with the present arrangement, knowing that in any case that the Blazers pull the tickets, in occurrence with any wrong doings to warrant it from [plaintiff], the $10,000 fee will not be returned to [plaintiff] no matter what."

Ultimately, plaintiff initiated this action in October 2022 by suing defendant for breach of contract and unjust enrichment. In laying out his claims in the second amended complaint, plaintiff alleged that defendant called plaintiff and told him to take the tickets off StubHub because the Trail Blazers "got super mad at defendant" and elaborated that the Trail Blazers canceled the two tickets and "Defendant solely got the $3500 credit toward Defendants account[.]" Plaintiff further alleged that he performed his obligations under the contract and that defendant, after being paid in full, would neither honor the agreement nor give a full refund.

Defendant moved for summary judgment, asserting, among other arguments, that the alleged actions resulting in any breach took place in August and September 2016, and thus the claim was barred by the six-year statute of limitations for contracts. *See* ORS 12.080(1) (generally providing that an "action upon a contract or liability, express or implied * * * shall be commenced within six years"). Plaintiff responded that he was unaware of defendant's agreement with the Trail Blazers and that the statute of limitations should begin to run on October 21, 2016, when defendant sent him two options regarding how to proceed. Ultimately, the trial court concluded that plaintiff's claims were outside the statute of limitations and granted defendant summary judgment, because "there was ample information" about "wrongdoings going on in August and September." Plaintiff timely appeals.

On appeal, plaintiff renews his argument that the trial court misapplied the statute of limitations. Plaintiff

maintains that the correct start date from which the limitations date is calculated should be October 21, which is when defendant sent plaintiff the email with two options, and that the trial court failed to account for concealment of material facts regarding the breach of their agreement. Defendant waived appearance on appeal by not filing a brief.

A party repudiates an executory contract when it refuses to perform its obligation under the contract "positively, unconditionally, unequivocally, distinctly and absolutely." *Swick v. Mueller et ux.*, 193 Or 668, 676, 238 P2d 717 (1952). The question on appeal is whether there is a genuine issue of material fact as to whether plaintiff knew or should have known that defendant breached the contract more than six years before plaintiff filed this action. As noted earlier, the trial court concluded that plaintiff must have known that defendant breached the contract in August and September, which is when defendant asked plaintiff to take the tickets off StubHub, the tickets reverted back to the Trail Blazers, plaintiff lost access to the tickets, and only defendant was refunded for the tickets. Notwithstanding those undisputed facts, plaintiff nevertheless contends that the trial court should have focused on the late October email exchange. However, given that plaintiff did not have access to the tickets as provided by the terms of their contract, all of which occurred before October, we conclude that plaintiff has not demonstrated that the trial court erred in granting summary judgment. That is, because plaintiff knew or should have known that the contract was breached in August and September, we affirm.

Affirmed.